## Young's Petition.

Argued March 25, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Edward O. Spotts, Jr.,* with him *William A. Walker,* for appellants.

No appearance was made, nor brief filed, for appellee.

OPINION BY MR. JUSTICE BARNES, June 25, 1937:

The appellants were the plaintiffs in an action of trespass to recover damages for the death of their son, a minor, as the result of the negligent operation of an automobile by defendant, who is here the petitioner. They recovered a verdict against defendant in the amount of $4,000, which was subsequently reduced by the court below to $3,800, upon which judgment was entered. The plaintiffs thereafter caused a writ of capias ad satisfaciendum to be issued, under which the defendant was taken into custody. Defendant then presented this petition for discharge from arrest, under the provisions of the Act of June 1, 1915, P. L. 704,* averring that he was without assets or property, and was unable to pay the judgment of the plaintiffs. As required by the act he attached to his petition a schedule of his assets and liabilities. The plaintiffs in their answer to the petition deny that defendant is unable to satisfy the judgment, and aver that he has concealed and transferred his assets to avoid its payment.

After a hearing during which the defendant was examined at length with respect to the items set forth in

---

* Section 4 of the Act of June 1, 1915, P. L. 704, provides in part as follows:

"Upon the hearing of the rule the petitioner shall be required to answer all questions put to him, and shall produce all books and papers required of him; and if it shall appear to the court that the petitioner is without means or property with which to pay the judgment, and that he has not secreted or assigned any of his property so as to avoid the payment of the judgment, the court may discharge him from arrest in said proceedings; but such discharge shall not in any way affect the judgment entered against him."

the schedule, the court below found that defendant had not secreted or assigned any assets, that he was without means to pay the judgment, and entered an order directing that he be discharged from arrest. The plaintiffs have appealed from this order, contending that the court below abused its discretion when it directed the discharge of the defendant.

According to the record, the defendant sets forth as his sole assets a one-half interest, valued at $2,350, in his home in Bellevue, Allegheny County, of which he and his wife are owners by entireties, and a claim against one Huntsman, in the amount of $294. He exhibits liabilities, in addition to the present judgment, amounting approximately to $8,000. Within ten days after the accident, which happened on May 10, 1934, defendant transferred the title of his automobile to his wife's name, and shortly thereafter he was allowed a credit of $307 on his "wife's car" in the purchase of a new automobile, upon which he paid the balance himself. Defendant is engaged in business as a bricklaying contractor. He had always conducted this business in his individual name until some nine months prior to the accident, when he transferred it to his wife, and thereafter it was called the Glenn Young Company. At the time of trial it was not registered under the Fictitious Names Act of June 28, 1917, P. L. 645. With respect to this business, defendant estimated on one occasion that he would receive a profit of $2,000 from a contract completed since the accident, although at the hearing he testified that he actually realized but $100 as profit from the work.

We have reviewed with care the entire typewritten record, the appeal being presented to us in forma pauperis, to determine whether there is evidence that the defendant has secreted or assigned any of his property. The assertion that defendant is possessed of a valuable interest in real estate situate in Bellevue is not sustained. While no testimony was introduced concerning the present market value of this house which was pur-

chased in 1930 by the defendant and his wife for $8,700, the court below found the property to be "hopelessly mortgaged." This conclusion appears to be well justified in view of the fact that the Home Owners' Loan Corporation, the owner of a mortgage thereon of $5,076, holds the property as mortgagee in possession, and has leased it to tenants other than the defendant and his wife, for $45 a month.

The plaintiffs urge that defendant was guilty of bad faith in permitting the amicable repossession of his automobile within a few days after the accident, and purchasing a new automobile in his wife's name at that time. This contention is not entitled to much weight, as an offer was made by the defendant to transfer the automobile to the plaintiffs, and this offer was renewed at the hearing of the petition, but declined.

While it is true the defendant is operating a bricklaying contracting business in the name of his wife, which is not registered as required by law, it clearly appears that the transfer of the business into her name occurred several months prior to the time of the accident; that the company has no assets, and furthermore that the wages or profits received therefrom by defendant are not sufficient to maintain his home. With respect to alleged bank accounts not revealed by defendant, a "very small account" ($83.33) was found to be in a bank in Pittsburgh in the wife's name, and there was a deposit of $200 in a bank in Bellevue, which has since become defunct. The only household furniture proven to be in possession of defendant is a bedroom suite, for which no value is given.

We are compelled to reach the same conclusion as the court below, that the evidence fails to disclose facts which would indicate that defendant has secreted or assigned any of his assets to avoid paying the judgment of the plaintiffs. He has answered all questions concerning his property and finances. While the testimony manifests his indifference to the obligation owing by

him to the plaintiffs, it does not establish that there is any property or income, other than mentioned, available for the satisfaction of the judgment.

Imprisonment for civil debt is abhorrent to the law of this Commonwealth. This policy has been established not only by the organic law of the Commonwealth, but as well by legislative enactment, and the decisions of the courts. In the Declaration of Rights of the Constitution it is provided by Article I, Section 16: "The person of a debtor, where there is not strong presumption of fraud, shall not be continued in prison after delivering up his estate for the benefit of his creditors in such manner as shall be prescribed by law." Under this provision of the Constitution, a debtor who has not secreted or assigned any of his property and is without means to pay his creditors, is entitled to a discharge from arrest or from imprisonment for debt, in the absence of a strong presumption of fraud arising from either the transaction upon which the judgment is based, or the proceedings for discharge.

The right to a discharge from arrest upon civil process is granted by two acts of Assembly now in force in this Commonwealth. The first is the Act of June 4, 1901, P. L. 404,—the general insolvency law of the state. This act is of general operation, in so far as it does not conflict with the Federal Bankruptcy Act. Section 5 thereof provides for the discharge of persons from imprisonment for debt. This section was amended by the Act of June 9, 1911, P. L. 728, and it is not in conflict with the federal act. The second act, under which the present petition is filed, is that of June 1, 1915, P. L. 704, relating to the discharge of persons from imprisonment for debt. Both acts provide substantially that the same procedure be followed by debtors who seek to take advantage of their provisions. The only difference between the acts is one of application to the particular case. The first act is available where the debtor possesses property and makes an assignment thereof for the benefit of his

creditors, while the second act provides for the discharge of a debtor who has neither property nor means to pay the judgment, and for whom it would be a vain thing to make an assignment. See *Miller's Petition,* 119 Pa. Superior Ct. 283, 288.

In the present case there is no evidence of the ownership of property by defendant that would justify his making an assignment for the benefit of his creditors. There is no question that his financial affairs are such that the appointment of an assignee would be a useless gesture. Hence there is no merit in the contention of the plaintiffs that the petition of the defendant should have been filed under the act of 1901, as amended, rather than under the act of 1915. If it is proper to grant relief to defendant, it seems to us it necessarily would be given under the provisions of the act of 1915.

In cases arising under the two acts, the question whether the defendant has been guilty of fraud, or has secreted or assigned his property, is a matter of judicial discretion dependent upon the facts in each case. However, once it is apparent that the defendant is without means to satisfy the judgment, and has not secreted or assigned his property, it is the duty of the court to grant the discharge of the defendant, otherwise the whim of the court is substituted for fundamental rights guaranteed by the Constitution and promulgated by acts of Assembly: *Miller's Petition,* supra; see also *In re Petition of John Ostrowske,* 79 Pa. Superior Ct. 311; *Matz v. Haug,* 80 Pa. Superior Ct. 583; *De Turk v. Gackenbach,* 96 Pa. Superior Ct. 38.

We are of opinion that there was no abuse of discretion on the part of the court below in directing the discharge of the petitioner from arrest. The order is therefore affirmed. Costs to be paid by appellants.