378 A.2d 1237

**COMMONWEALTH of Pennsylvania**

v.

**Theodore SCHWARTZ, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1976.

Decided Oct. 6, 1977.

Nino V. Tinari, Philadelphia, for appellant.

458

Steven H. Goldblatt and Deborah E. Glass, Assistant District Attorneys, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

This is an appeal from judgment of sentence imposed following a non-jury trial which resulted in the conviction of appellant on five counts of passing bad checks.[1] We find the two issues raised by appellant to be without merit, and affirm.

Appellant, a used car dealer, purchased forty-three (43) automobiles from Northeast Dodge. The transactions took place between August 6, 1974, and November 30, 1974. For each transaction, appellant completed a draft payable to Northeast Dodge.[2] The title to each automobile purchased was placed in an envelope along with the draft for the purchase of that particular automobile. The envelope was then forwarded by Northeast Dodge to the drawee bank, Philadelphia National, for payment. Twenty-three of the drafts were not paid by the bank, and were returned to Northeast Dodge. Northeast Dodge notified appellant, but the drafts were never made good. Criminal prosecution commenced, resulting in the convictions from which this appeal is taken.

The first contention made by appellant is that § 4105 of the Crimes Code applies only to negotiable instruments, and that the sales drafts in the case at bar were not

1. "A person commits an offense if he issues or passes a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee." Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 4105 (1973).

2. The drafts were on a printed form containing appellant's business letterhead, a space for the date, the words "Pay to the order of", followed by a space for the payee's name and the amount to be paid. Above the space for the drawer's signature was the phrase "Drawee has the privilege to examine papers before acceptance of draft." The "papers" referred to were the titles for the automobiles.

negotiable. Due to our disposition of the first phase of this argument, we need not consider the second element. Nowhere in § 4105 is there any indication that the "check or similar sight order" must be negotiable in order for a fraud to have been perpetrated. Appellant relies on the Uniform Commercial Code to argue the non-negotiability of the instrument here involved. Assuming, *arguendo*, that the UCC may properly be relied on to interpret criminal statutes, that body of commercial law renders the question of the negotiability moot as it applies to the drafts in the present case. The reason for this is that the UCC specifically states that the terms "draft" and "check" may refer to both negotiable and non-negotiable instruments. Act of April 6, 1953, P.L. 3, § 3–104. Reenacted October 2, 1959, P.L. 1023, § 3, 12A P.S. § 3–104 (1970).

Since there is no authority upon which to base a requirement of negotiability under § 4105, we then look to see if such a requirement would logically assist in preventing the harm which the legislature sought to prohibit. The purpose of the "bad checks" statute is to prevent fraud. *Cf. Commonwealth v. Bonetti*, 211 Pa.Super. 161, 235 A.2d 447 (1967). That fraud is accomplished when a party issues a draft for the payment of money, knowing that there are insufficient funds to support the payment of the draft. Whether that draft meets the technical requirements of negotiability set forth in the UCC has no bearing on whether or not a fraud has been committed. Had the legislature intended to so limit the application of § 4105, they would have expressly done so. In the absence of such an expression, we hold that § 4105 does include both negotiable and non-negotiable instruments. Whether the instruments involved in the case at bar were or were not negotiable thus ceases to be an issue.

The second and final contention raised by appellant is that the trial court erred in failing to treat the instruments as post-dated checks. Had they been so treated, the fact finder could not have invoked the statutory presumption of knowledge that the check would not be paid, as

460

provided in subsection (b) of § 4105. Thus this argument actually goes to the sufficiency of the evidence, which was not raised below. In any event, appellant's argument must fail for the simple reason that the instruments were *not* post-dated. The fact that the drawee bank had the privilege to examine the title papers likewise adds nothing to appellant's argument that the instruments were promises to pay in the future. The drafts were payable when Northeast Dodge presented the title and the draft to the drawee bank. Appellant cannot rely on the fact that presentment and payment may have occurred several weeks after issuance of the draft to support his contention that the drafts were post-dated. They were not.

Judgment of Sentence affirmed.