406 A.2d 516

**COMMONWEALTH of Pennsylvania**

**v.**

**Marvin MUTNIK, Appellant.**

Supreme Court of Pennsylvania.

Argued April 24, 1979.

Decided Oct. 1, 1979.

Charles P. Gelso, Moses & Gelso, Wilkes-Barre, Luzerne County, for appellant.

Thomas J. Glenn, Jr., J. P. Giovannini, Asst. Dist. Attys., Luzerne County, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION

NIX, Justice.

Appellant Marvin Mutnik was convicted under 18 Pa.C. S.A. § 4105 (1973) of the charge of passing a "bad check" in the amount of $3,269.44 drawn on the corporate account of the M & M Construction Company, of which he is an officer. The check was made payable to Thomas Roper as part payment of an existing past-due account owed by the company to Roper. Appellant admitted at trial that he had issued the check, that he had been informed by Roper that it had been returned for insufficient funds, and that he never made a deposit to cover the check after receiving notice that it had not been honored by the bank. The Superior Court affirmed per curiam without opinion, although Judge Hoffman wrote a dissenting statement. *Commonwealth v. Mutnik*, 249 Pa.Super. 603, 377 A.2d 988 (1977). We granted allocatur and now affirm the judgment of sentence.

The two issues presented for our review are whether section 4105 requires a showing of intent to defraud, and if it does not, is article I, section 16 of our State Constitution violated. Section 4105 provides:

§ 4105.   Bad checks

(a) Offense defined.—A person commits an offense if he issues or passes a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee.

(b) Presumption.—For the purposes of this section as well as in any prosecution for theft committed by means of a bad check, an issuer is presumed to know that the check or order (other than a post-dated check or order) would not be paid, if:

(1) the issuer had no account with the drawee at the time the check or order was issued;  or

(2) payment was refused by the drawee for lack of funds, upon presentation within 30 days after issue, and the issuer failed to make good within ten days after receiving notice of that refusal.

(c) Grading.—An offense under this section is a misdemeanor of the second degree if the amount of the check or order exceeds $200;  otherwise it is a summary offense.

This statute differs in one important aspect from its repealed predecessor, the Act of June 24, 1939, P.L. 872, § 854, as amended, 18 P.S. § 4854.[1]   Former section 4854 expressly

---

1.   The prior statute stated, in relevant part:
   § 4854.   Worthless checks and drafts
      Whoever, with intent to defraud, makes, draws, utters or delivers any check, draft, or order for the payment of money, upon any bank, banking institution, trust company, or other depository, knowing, at the time of such making, drawing, uttering, or delivering, that the maker or drawer has not sufficient funds in, or credit with, such bank, banking institution, trust company, or other depository, for the payment of such check, although no express representation is made in reference thereto, shall, upon summary conviction thereof, if the amount of such check, draft or order does not exceed two hundred dollars ($200) be sentenced to pay a fine of not more than three hundred dollars ($300), or to undergo imprisonment for not more than three (3) months, or both, or if the amount of such check, draft or order exceeds two hundred dollars ($200), then such person is guilty of a misdemeanor, and upon conviction thereof, shall be imprisoned not exceeding two (2) years, or fined not exceeding one thousand dollars ($1,000), or both.
      In any prosecution under this section, the making, drawing, uttering or delivering of a check, draft, or order, payment of which

required an intent to defraud as one of the essential elements of the crime, *see Commonwealth v. Horton*, 465 Pa. 213, 217, 348 A.2d 728, 730 (1975). In redrafting the Crimes Code in 1972, the legislature deliberately omitted the requirement of an intent to defraud as a constituent element of the crime of issuing a bad check.

■ Prior to this case the Superior Court had not had an occasion to interpret the new statute. Two courts of common pleas, however, had interpreted the statute and concluded that the element of intent to defraud must be read into the statute by the courts to enable the act to pass constitutional scrutiny. *Commonwealth v. Willet*, 74 Pa.D. &C.2d 368 (Monroe County, 1976); *Commonwealth v. Ulsh*, 68 Pa.D.&C.2d 124 (Cumberland County, 1974). *Contra, Commonwealth v. Keown*, 6 Pa.D.&C.3d 720 (Bucks County, 1978); *see also Petition of Allentown Osteopathic Hosp.*, 67 Pa.D.&C.2d 790 (Lehigh County, 1974) (wherein the court reached the conclusion that the new statute had eliminated "an intent to defraud" but did not reach the constitutional question). In *Keown* the court analyzed the *Willet* and *Ulsh* opinions and came to the conclusions that the legislature had in fact decided to remove the element of intent to defraud from the crime and that without such an element the statute, nevertheless, was constitutional.

We agree with the ruling in *Keown* that:

. . . it is of some significance that the legislature omitted the specific intent to defraud from the definition of the bad check crime in the Crimes Code. Clearly the legislature understood the significance of these words because in the very same chapter in which the bad check charge is found the legislature saw fit to include an intent

is refused by the drawee because of lack of funds or credit, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or credit with, such bank, banking institution, trust company, or other depository, unless such maker or drawer shall have paid the drawee thereof the amount due thereon, together with interest and protest fees, within ten (10) days after receiving notice that such check, draft, or order has not been paid to the drawee.
Appendix, 18 Pa.C.S.A. (1973).

to defraud as an element of forgery, see 18 C.P.S.A. [Pa.C.S.A.] § 4101, in the crime of simulating objects of antiquity, see 18 C.P.S.A. [Pa.C.S.A.] § 4102, and in the fraudulent destruction, removal or concealment of recordable instruments, see 18 C.P.S.A. [Pa.C.S.A.] § 4103. See also 18 C.P.S.A. [Pa.C.S.A.] § 4104 defining tampering with records or identification. We believe, therefore, that by the omission of the specific element of intent to defraud from the bad check charge the legislature intended to denominate passing a check for which there are insufficient funds with knowledge of the issuer as a crime regardless of whether present consideration passes at the time of the passing of the check or not.

6 Pa.D.&C.3d at 723.

Moreover, we are permitted to consider the prior act only when the words of the present statute are not explicit. When, as here, "the words of a statute are clear and free from all possible ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b) (1979 Pamphlet). We therefore hold that section 4105 does not require the Commonwealth to prove an intent to defraud on the part of the defendant.[2]

Appellant contends that unless an intent to defraud is an element of the crime of passing bad checks, then section 4105 contravenes our constitutional proscription against imprisonment for debt. Article I, section 16 of our constitution provides: "The person of a debtor, where there is not strong presumption of fraud, shall not be continued in prison after delivering up his estate for the benefit of his creditors in such manner as shall be prescribed by law." Although both

**2.** In his dissenting statement Judge Hoffman argued that a construction of section 4105 not requiring an intent to defraud would "invite litigants to use the already overtaxed criminal justice system to resolve what were essentially contract disputes." It is our view that the perversion of the flow of commercial paper is more than a mere private contract dispute. Furthermore, Judge Hoffman's observation is at best a policy question for the legislature, it does reflect upon the parameters of the police power.

the *Ulsh* and *Willet* cases agree with appellant's contention,[3] we believe that section 4105 is constitutional even without a requirement of an intent to defraud.

Article I, section 16 has rarely been interpreted by our courts. It is clear, nonetheless, that "[i]mprisonment for civil debt is abhorrent to the law of this Commonwealth." *Young's Petition*, 327 Pa. 267, 271, 192 A. 911 (1937). The constitutions of 1776, 1790, and 1838 all had provisions equivalent to the present section, and legislative implementation of these provisions has followed. *See e. g.* Act of July 12, 1842, P.L. 339, § 1, *as amended*, 12 P.S. § 257 (1953) (repealed by JARA, effective June 27, 1980); Act of February 28, 1787, P.L. 396, 2 Smith Laws of Pennsylvania 1781– 1790.[4] *See generally, Miller's Petition*, 119 Pa.Super. 283, 291, 180 A. 904 (1935).

The very language of section 16 precludes its applicability to the present case: appellant, although a debtor, is not being "continued in prison after delivering up his estate for the benefit of his creditors." The few cases that have interpreted this section have concluded that it seeks to prevent the continuing imprisonment, under civil arrest, of a debtor who has surrendered his assets for the payment of

**3.** The court in *Ulsh* relied heavily upon several old cases from other jurisdictions. *See* 68 Pa.D.&C.2d at 127 & n.2, discussing, for example, *Burnam v. Commonwealth*, 228 Ky. 410, 15 S.W.2d 256 (Ky. 1929); *State v. Meeks*, 247 P. 1099 (Ariz.1926); *Duncan v. State*, 172 Ga. 186, 157 S.E. 670 (Ga.1931). Despite whatever continuing vitality, if any, these cases may have in their respective jurisdictions, we decline to follow them. It should be noted that the court in *Ulsh* improperly reached the constitutional issue presented here. *Ulsh* involved a post-dated check which section 4105 explicitly exempts from parts of its coverage. *See Commonwealth v. Schwartz*, 250 Pa.Super. 455, 459–60, 378 A.2d 1237, 1239 (1977).

**4.** The early statute books of this Commonwealth are replete with examples of attempts to ameliorate the plight of persons imprisoned for debt. *E. g.*, Act of April 4, 1792, P.L. 78, 3 Smith Laws of Pennsylvania 1791–1802. The earliest such law was passed by the General Assembly during its 1729–1730 Session and had a quaint provision that allowed the debtor's creditors to keep the debtor imprisoned if they agreed to pay the costs of maintaining the debtor in jail. Act of February 14, 1730, P.L. 181 § 11, 1 Smith Laws of Pennsylvania 1700–1781.

the claims of his bona fide creditors. *See, e. g., Young's Petition, supra; Bloomington v. Shapiro,* 129 Pa.Super. 218, 195 A. 642 (1937). Neither case law nor the language of the constitutional provision precludes the imprisonment of one who knowingly passes a bad check. Such a person is not being imprisoned for being a debtor. Rather, he is being imprisoned for intentionally disrupting the flow of and undermining the soundness of commercial paper in this Commonwealth. Our interpretation is in agreement with that reached in *Keown,* wherein the court stated:

. . . In defining the crime as a passing of a bad check knowing that it would be dishonored, regardless of consideration, the legislature did not evolve or proclaim indebtedness as a crime, but rather proclaimed it a crime for anyone to issue a bad check regardless of whether present consideration flows. The purpose of this statute is not to imprison debtors but to protect against impairment of commercial transactions. Most business today is conducted by the use of checks and, as such, checks have assumed virtually the same value as governmental currency. As such, the legislature has declared it a crime for anyone to impugn or impair such a document regardless of the nature of the transaction in which it is passed. This we believe to be within the parameters of the police power of the legislature and we find no impairment to the constitutionality of such act.

6 Pa.D.&C.3d at 724.

We therefore affirm the judgment of sentence.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice, dissenting.

I dissent. I agree with Judge Hoffman, dissenting in the Superior Court, that a construction of § 4105 which does not require an intent to defraud, invites litigants to use the criminal justice system to collect civil debts.

The majority opinion states that appellant is not being imprisoned for being a debtor but "for intentionally disrupt-

ing the flow of and undermining the soundness of commercial paper in this Commonwealth." Under this guise or a similar one, every civil default could be converted into a criminal offense by stating that the accused is not being imprisoned for the civil default but rather is "being imprisoned for intentionally disrupting the flow of and undermining the soundness of [something] in this Commonwealth"— undermining deeds (trespass actions) support agreements (nonsupport actions), newspapers (defamation actions), traffic flow (negligence actions), any written contract (breach of contract actions). In all civil actions, it can be said that *someone* intentionally disrupted the flow of *something* and undermined the soundness of *something*. What is sacred about checks that they deserve special protection in the world of private commerce?

Moreover, the majority opinion starts out with the proposition that it was not proven that the defendant had an *intent* to defraud—the opinion ends up by concluding that the defendant had an *intent* to disrupt and undermine something. Where is the evidence as to the *intent* to disrupt and undermine? It is as lacking in the record as the intent to defraud.

I completely disagree with the majority's interpretation of Article I, § 16. The majority opinion says that you cannot be imprisoned for debt only if you voluntarily show up at the courthouse and hand over your assets. That is not the meaning of Article I, § 16. In the civil law, there is an entire system in existence for reaching the assets of debtors including judgment, levy, execution, and sale. A citizen must deliver his assets for the benefit of creditors, under the constitutional provision, *in such manner as shall be prescribed by law.* This means he must not conceal nor assign assets from the process of judgment, levy, execution, and sale. Even in the case of concealment or the assignment of assets to a third party there must be a *strong presumption of fraud.* See *In Re Young's Petition,* 327 Pa. 267, 192 A. 911 (1937). The burden is not on the citizen to prove he showed up at the courthouse and deposited his assets in the

436

courtroom. The burden is on the prosecution to establish fraud, beyond a reasonable doubt, in the concealment of assets from the established processes of the law.

I must respectfully dissent from a conclusion that takes a dangerous step in bringing back debtors' prisons.