REQUESTED BY: Gary C. Anderberg, Adams County Attorney
1. Does Neb.Rev.Stat. § 28-611(3) (Supp. 1983) violate Article I, Section 20 of the Nebraska Constitution, which prohibits imprisonment for debt, because it does not require proof of intent to defraud?
1. No.
Neb.Rev.Stat. § 28-611(1) (Supp. 1983) proscribes the issuance of bad checks by someone who obtains property, services, or present value of any kind by doing so, knowing that the check is bad at the time of issuance. Subsection 3 of that section deals with the knowing issuance of a bad check, but does not require that any property, services, or present value be obtained thereby.
Article I, Section 20 of the Nebraska Constitution provides that `No person shall be imprisoned for debt in any civil action or mesne or final process, unless in cases of fraud.'
A person owing a debt might knowingly give his creditor a bad check, and would thereby violate § 28-611(3). He has not, of course, extinguished the debt, nor changed the legal position of either of the parties. Can be, consistent with Article I, Section 20, be punished for such action?
There is authority for the proposition that punishment for such action violates the prohibition against imprisonment for debt. In Blakeney v. State, 39 So.2d 767
Miss. (1949), the court held that the giving of a bad check for services already rendered was for payment of a debt, and that if the statute were construed to cover it, it would be in violation of the constitutional prohibition against imprisonment for debt.
In State v. Kock, 207 Neb. 731, 300 N.W.2d 824
(1981), the court dealt with § 28-611(1), in which present value is required, and used language which might imply that lack of a requirement of present value might result in a violation of the constitutional provision. However, we point out that such language is pure dictum, and the court specifically did not consider any portion of § 28-611 except subsection 1.
We believe the great weight of modern authority is to the effect that intent to defraud and present value are not constitutionally required. Section 224.5 of the Model Penal Code deals with bad checks, and does not require the obtaining of property or present value. Under the comment on that section we find: `Moreover, it seems appropriate to reach the issuance of bad checks in situations where property is not obtained thereby, as in the case of a gift. One who issues a bad check under such circumstances knows that, although he is not cheating the recipient, the check is likely to be negotiated for cash, credit, or property and thus have an adverse impact on ordinary commerce.'
In the case of Application of Windle, 179 Kan. 239,294 P.2d 213 (1956), the statute made the issuance of a bad check for more than $20 a felony, without proof of present value or a fraud. Holding that it did not provide for imprisonment for debt, the court said the purpose of the statute was to discourage overdrafts and resulting bad banking, to stop the practice of `check-kiting,' and generally to avert the mischief to trade, commerce, and banking which the circulation of worthless checks inflicts, and that these evils were all quite distinct from those involving fraud.
In Commonwealth v. Nutnik, 406 A.2d 516 Pa. (1979), the court held a statute making the issuance of a bad check a crime did not violate the constitution, saying that the defendant was not being imprisoned for debt, but for intentionally disrupting the flow of and undermining the soundness of commercial paper.
The court reached the same conclusion in State v.McDowell, 312 N.W.2d 301 N.D. (1981), pointing out the importance of the use of checks in the business world and the havoc which would be created by the curtailing of the practice, and saying that it was an activity which needed to be carefully regulated.
It is our conclusion that the modern view is that the preservation of public confidence in negotiable instruments, particularly checks, justifies criminal sanctions against one who knowingly injects a worthless instrument into the stream of commerce, even if no fraud is involved. We believe that our court, if directly confronted with the question, will reach the conclusion that the Legislature could reasonably conclude that regulation of such activities by criminal sanction was necessary.
We normally presume that statutes passed by the Legislature are constitutionally valid. We see no occasion to depart from that presumption in this instance.
Very truly yours,
PAUL L. DOUGLAS Attorney General
Ralph H. Gillan Assistant Attorney General
Paul L. Douglas Paul L. Douglas Attorney General