551 A.2d 580

COMMONWEALTH of Pennsylvania, Appellant,

v.

Curtis W. BURRUSS and Carol E. Burruss, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 5, 1988.
Filed Dec. 13, 1988.

Shawn C. Wagner, Assistant District Attorney, Carlisle, for Com., appellant.

Sally Jo Winder, Shippensburg, for appellees.

Before CIRILLO, President Judge, and BROSKY, ROWLEY, WIEAND, McEWEN, DEL SOLE, MONTEMURO, BECK and TAMILIA, JJ.

WIEAND, Judge:

The issue in this appeal is whether the two year statute of limitations within which to prosecute for writing a bad check in violation of 18 Pa.C.S. § 4105 is tolled or extended by the drawer's fraudulent promises to make the check good after the payee learns that the check has been dishonored by the drawee bank.

On April 15, 1984, Curtis and Carol Burruss issued a check in the amount of nine thousand, three hundred eighty ($9,380.00) dollars to Steven Best in payment for several horses which had been sold by Best to the Burrusses. Best deposited the check on the following day, but within five days it was returned unpaid because of insufficient funds in the drawer's account. Best was told to redeposit the check and did so. By the end of April or the beginning of May, however, the check had again been returned for insufficient funds. When Best contacted the Burrusses, he was told that their bank balance was insufficient to cover the check because they had deposited in their account a bad check taken in another business transaction. The Burrusses assured Best that the check would be made good. In June, 1984, in response to numerous inquiries by Best, the Burrusses offered to deliver as security for their debt a trailer which they represented to have a value of ten thousand ($10,000.00) dollars. Best accepted the offer. After several weeks had passed and the trailer had not been delivered, Best inquired and was told that the trailer had been totally destroyed in an accident. Throughout the ensuing autumn, the Burrusses continued to assure Best that they would pay Best the money which they owed to him. Finally, in December, 1984, the Burrusses promised to send to Best a series of twenty (20) post-dated checks, each in the amount of five

hundred ($500.00) dollars, and Best agreed to deposit one check per month until the debt was paid in full. These checks were delivered to Best in March, 1985. The first check was dated April 15, 1985. It was deposited and paid. During the next several months, however, all checks deposited by Best were returned unpaid because of insufficient funds. Then, after five or six months, another check was paid. On or about March 15, 1986, a third check was paid. All other checks were returned for insufficient funds. In the meantime, the Burrusses continued to assure Best that the bad checks would ultimately be paid. Finally, in April, 1986, Best decided that his debtors were not acting in good faith and took his claim to the District Attorney. A criminal complaint was filed on July 30, 1986, in which the Burrusses were charged with passing a single bad check on April 15, 1984.[1]

The Burrusses were tried by jury and were found guilty. In response to a motion for post-trial relief, however, the trial court arrested judgment because prosecution had not been commenced within the two years allowed therefor by the statute of limitations. The Commonwealth appealed.

Except as otherwise provided, prosecution for an offense must be commenced within two years after it has been committed. 42 Pa.C.S. § 5552(a). An exception appears at 42 Pa.C.S. § 5552(c)(1) as follows:

(c) **Exceptions.**—If the period prescribed in subsection (a) or subsection (b) has expired, a prosecution may nevertheless be commenced for:

(1) Any offense a material element of which is either fraud or a breach of fiduciary obligation within one year after discovery of the offense by an aggrieved party or by a person who has a legal duty to represent an aggrieved party and who is himself not a party to the offense, but in no case shall this paragraph extend the period of limitation otherwise applicable by more than three years.

---

1. An earlier complaint charging theft by deception and passing a bad check had been filed on May 21, 1986 but was subsequently withdrawn.

The Commonwealth argues that fraud is a material element of the crime of bad checks and that the statute of limitations, therefore, is tolled until one year after the offense has been discovered.

The offense of passing bad checks is defined by statute as follows:

**(a) Offense defined.—**

(1) A person commits an offense if he issues or passes a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee.

. . . . .

**(b) Presumption.**—For the purposes of this section as well as in any prosecution for theft committed by means of a bad check, an issuer is presumed to know that the check or order (other than a post-dated check or order) would not be paid, if:

(1) the issuer had no account with the drawee at the time the check or order was issued; or

(2) payment was refused by the drawee for lack of funds, upon presentation within 30 days after issue, and the issuer failed to make good within ten days after receiving notice of that refusal.

18 Pa.C.S. § 4105.

The Pennsylvania Supreme Court, in *Commonwealth v. Mutnik*, 486 Pa. 428, 406 A.2d 516 (1979), considered this section of the Pennsylvania Crimes Code and held that it did not impose upon the Commonwealth a requirement to prove an intent to defraud on the part of one accused of passing a bad check. The Court reasoned as follows:

This statute differs in one important aspect from its repealed predecessor, the Act of June 24, 1939, P.L. 872, § 854, *as amended*, 18 P.S. § 4854. Former section 4854 expressly required an intent to defraud as one of the essential elements of the crime, *see Commonwealth v. Horton*, 465 Pa. 213, 217, 348 A.2d 728, 730 (1975). In redrafting the Crimes Code in 1972, the legislature deliberately omitted the requirement of an intent to defraud as a constituent element of the crime of issuing a bad check.

Prior to this case the Superior Court had not had an occasion to interpret the new statute. Two courts of common pleas, however, had interpreted the statute and concluded that the element of intent to defraud must be read into the statute by the courts to enable the act to pass constitutional scrutiny. *Commonwealth v. Willet,* 74 Pa.D. & C.2d 368 (Monroe County, 1976); *Commonwealth v. Ulsh,* 68 Pa.D. & C.2d 124 (Cumberland County, 1974). *Contra, Commonwealth v. Keown,* 6 Pa.D. & C.3d 720 (Bucks County, 1978); *see also Petition of Allentown Osteopathic Hosp.,* 67 Pa.D. & C.2d 790 (Lehigh County, 1974) (wherein the court reached the conclusion that the new statute had eliminated "an intent to defraud" but did not reach the constitutional question). In *Keown* the court analyzed the *Willet* and *Ulsh* opinions and came to the conclusions that the legislature had in fact decided to remove the element of intent to defraud from the crime and that without such an element the statute, nevertheless, was constitutional.

We agree with the ruling in *Keown* that:

... it is of some significance that the legislature omitted the specific intent to defraud from the definition of the bad check crime in the Crimes Code. Clearly the legislature understood the significance of these words because in the very same chapter in which the bad check charge is found the legislature saw fit to include an intent to defraud as an element of forgery, see 18 C.P.S.A. [Pa.C.S.A.] § 4101, in the crime of simulating objects of antiquity, see 18 C.P.S.A. [Pa.C.S.A.] § 4102, and in the fraudulent destruction, removal or concealment of recordable instruments, see 18 C.P.S.A. [Pa.C. S.A.] § 4103. See also 18 C.P.S.A. [Pa.C.S.A.] § 4104 defining tampering with records or identification. We believe, therefore, that by the omission of the specific element of intent to defraud from the bad check charge the legislature intended to denominate passing a check for which there are insufficient funds with knowledge of the issuer as a crime regardless of whether present

consideration passes at the time of the passing of the check or not.

6 Pa.D. & C.3d at 723.

Moreover, we are permitted to consider the prior act only when the words of the present statute are not explicit. When, as here, "the words of a statute are clear and free from all possible ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b) (1979 Pamphlet). *We therefore hold that section 4105 does not require the Commonwealth to prove an intent to defraud on the part of the defendant.*

*Commonwealth v. Mutnik, supra,* 486 Pa. at 430–432, 406 A.2d at 517–518 (emphasis added) (footnotes omitted). The Supreme Court subsequently reaffirmed its ruling in *Commonwealth v. Kyslinger,* 506 Pa. 132, 484 A.2d 389 (1984), where it said:

It is well established that, under 18 Pa.C.S.A. § 4105, *supra,* the legislature intended to denominate the passing of a check for which there are insufficient funds, where the insufficiency is within the knowledge of the issuer, as a crime regardless of whether the issuer possessed a specific intent to defraud. *Commonwealth v. Mutnik,* 486 Pa. 428, 406 A.2d 516 (1979).

*Id.,* 506 Pa. at 135, 484 A.2d at 390. See also: *Commonwealth v. Frank,* 322 Pa.Super. 6, 468 A.2d 1131 (1983).

In *Commonwealth v. Eackles,* 286 Pa.Super. 146, 428 A.2d 614 (1981), the Superior Court was called upon to determine whether a similar exception to the statute of limitations was applicable to the crime of theft by unlawful taking. The *Eackles* court held that the fraud exception was inapplicable, applying the following analysis:

Fraud is characterized by a false representation of a material matter made with knowledge of its falsity and with the intent to deceive. *Commonwealth v. DeBellis,* 20 D. & C.2d 153 (C.P. Bucks 1959), affd., 191 Pa.Super. 561, 159 A.2d 765 (1960), affd., 401 Pa. 552, 165 A.2d 77 (1960). In determining whether this is a "material element" of the crime of theft by unlawful taking, we find

assistance in the definitional section of the Crimes Code at 18 Pa.C.S. § 103. "Material element of an offense" is there defined as: "An element that does not relate exclusively to the statute of limitations, jurisdiction, venue or to any other matter similarly unconnected with: (1) the harm or evil incident to conduct, sought to be prevented by the law defining the offense; or (2) the existence of a justification or excuse for such conduct." As relevant to this case, therefore, if fraud is to be a material element of the offense charged, it would be necessary that it have some connection with the harm or evil sought to be prevented. The harm sought to be prevented by the language making theft a crime is clearly the unlawful taking of another's property. To convict of theft by unlawful taking, the Commonwealth is not required to prove that the taking was accompanied by fraud in the legal sense. Compare: *Commonwealth v. Mutnik*, 486 Pa. 428, 406 A.2d 516 (1979). Neither is fraud the harm or evil sought to be prevented by the language making theft by unlawful taking a crime. We conclude, therefore, that fraud is not a material element of the crime of theft by unlawful taking.

*Id.*, 286 Pa. at 154–155, 428 A.2d at 618–619. See also: *Commonwealth v. Goldhammer*, 507 Pa. 236, 241–245, 489 A.2d 1307, 1310–1312 (1985), *reversed on other grounds*, 474 U.S. 28, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985), *appeal after remand*, 512 Pa. 587, 517 A.2d 1280 (1986), *cert. denied*, 480 U.S. 950, 107 S.Ct. 1613, 94 L.Ed.2d 798 (1987) (same); *Commonwealth v. Hawkins*, 294 Pa.Super. 57, 64–65, 439 A.2d 748, 751–752 (1982) (applying same analysis in holding that fraud is not a material element of theft by receiving stolen property).

The harm or evil sought to be prevented by the bad check statute is the intentional disrupting of "the flow of and undermining the soundness of commercial paper in this Commonwealth." *Commonwealth v. Mutnik, supra*, 486 Pa. at 434, 406 A.2d at 519. Simply stated, " [t]he purpose of this statute is ... to protect against impairment of commercial transactions.' " *Id.*, quoting *Commonwealth v. Keown*, 6

Pa. D & C.3d 720, 724 (Bucks County, 1978).[2] It seems abundantly clear, therefore, that fraud does not relate to the harm or evil sought to be prevented by the bad check statute. To prove a violation it is necessary to establish only that the drawer issued a check knowing that there were insufficient funds in his or her account to cover it.[3]

Moreover, even if we were to assume for purposes of argument that fraud was an essential element of the offense of passing a bad check, we would nevertheless be compelled to hold that criminal prosecution was time barred under the facts of this case.

The bad check in the instant case was issued on April 15, 1984. By the end of April or early May, 1984, the check had been returned to the payee for insufficient funds, had been resubmitted for payment, and had again been dishonored. The criminal complaint, however, was not filed until July 30, 1986. By then, not only had one year expired after discovery of the offense but, in fact, more than two years had expired following discovery of the offense. Because of this lapse of time, prosecution was barred. Even if fraud were an element of the offense, it could not have tolled the statute of limitations until July 30, 1986.

The Commonwealth relies upon a series of promises made by the appellee-drawers to pay the check after it had twice

**2.** To the extent that language in the prior Superior Court decision in *Commonwealth v. Schwartz*, 250 Pa.Super. 455, 459, 378 A.2d 1237, 1239 (1977) suggests that "[t]he purpose of the 'bad checks' statute is to prevent fraud," that decision has been effectively overruled by the subsequent decisions of the Supreme Court in *Commonwealth v. Mutnik, supra* and *Commonwealth v. Kyslinger, supra*.

**3.** Additional support for our holding that fraud is not a material element of the bad check offense appears in Toll, Pennsylvania Crimes Code Annot. § 4105, where the author, quoting the Model Penal Code Comment (T.D. No. 2, pp. 117–118), has written:

The question arises whether it should be criminal to give someone a bad check as a gift or in payment of a pre-existing debt. The affirmative answer given under most present laws is retained in Section ... [4105], primarily for the reason that one who negotiates a bad check knows that even if he is not cheating the recipient, the check is likely to be renegotiated for cash or property, or at least to result in improper bank credits. Considering the minor penalties here contemplated, this behavior may properly be punished.

been dishonored in order to extend the time for prosecution. This is unwarranted. The promises made by the drawers of the check did not in any way conceal the offense or prevent the payee from learning that a crime had been committed. The statute of limitations began to run, at the latest, when ten days had expired without the check's having been made good.[4] The period of limitation was not thereafter tolled by appellees' promises to make restitution. Those promises were made after the crime had been completed and did not prevent the payee from learning of the commission of the crime. It follows that the exception to the statute of limitations in 42 Pa.C.S. § 5552(c)(1) would not in any event save the prosecution in the instant case.

Because criminal prosecution was barred by the statute of limitations, the trial court properly arrested judgment.

ORDER AFFIRMED.

---

**4.** Knowledge that a check will be dishonored is presumed when the drawer fails to make the check good within ten days after receiving notice that it has been dishonored. 18 Pa.C.S. § 4105(b)(2). Thus, the instant offense was complete no later than ten days after notice to appellees that the check had been returned for insufficient funds.