UNITED STATES, Appellee,

v.

**Brian J. GUESS, Airman Basic,
U.S. Air Force, Appellant.**

No. 97–0235.
Crim.App. No. 31910.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 4, 1997.

Decided April 14, 1998.

For Appellant: *Major Kevin P. Koehler* (argued); *Lieutenant Colonel Kim L. Sheffield* (on brief); *Colonel Douglas H. Kohrt.*

For Appellee: *Major Allen G. Erickson* (argued); *Colonel Theodore J. Fink* and *Lieutenant Colonel Michael J. Breslin* (on brief); *Colonel Brenda J. Hollis.*

---

*Opinion of the Court*

CRAWFORD Judge:

On mixed pleas, appellant was convicted by general court-martial of failure to obey a lawful order, dereliction of duty, larceny (3 specifications), wrongful appropriation (2 specifications), making, drawing, or uttering checks without sufficient funds (4 specifications), unlawful entry, and soliciting another

to commit an offense, in violation of Articles 92, 121, 123a, and 134, Uniform Code of Military Justice, 10 USC §§ 892, 921, 923a, and 934, respectively. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for 1 year and 8 months, and forfeiture of $500 pay per month for 1 year and 8 months. The Court of Criminal Appeals affirmed the findings and the sentence in an unpublished opinion.

On appeal, this Court granted the following issue:

> WHETHER THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUSTAIN THE FINDINGS OF GUILTY TO CHARGE II AND ITS SPECIFICATIONS.

We hold that the evidence is legally sufficient to find appellant guilty of making, uttering, or drawing checks without sufficient funds (Charge II).

## FACTS

On November 25, 1994, appellant and another airman, while at a restaurant, noticed a woman's bag which had been left on the back of a chair. They took the bag and rummaged through its contents. Appellant found and removed a book of blank starter checks for a new account belonging to W.M. and L.M.

The two airmen then proceeded to a local mall where appellant purchased items at two stores using two of the starter checks. On those starter checks, appellant wrote his name and address in the left-hand corner, signed his name, and provided his driver's license to store clerks for identification purposes. That evening, appellant filled out and presented another starter check. The following day, appellant used a fourth starter check at a department store. During each transaction, appellant knew that he was not the account holder upon which the check was drawn.

Three of the four checks which appellant presented were honored by the credit union. A total of $330.17 was withdrawn from the account of W.M. and L.M. The fourth check was dishonored.

## DISCUSSION

■ Appellant argues that the Government did not prove beyond a reasonable doubt that appellant knew W.M. and L.M., the account holders, had insufficient funds in their bank account. In addition, appellant contends that the purpose of Article 123a is to protect merchants from being defrauded of money, property, or something of value; but, here, three of the four checks made to merchants were honored.

The Government responds that under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the evidence is legally sufficient. The Government argues that Article 123a only requires that an accused know that the accused does not have sufficient funds in the account. In addition, the Government argues that appellant's stipulation that he was not the owner of the account is enough to draw the conclusion that appellant knew he did not have sufficient funds in that account.

Noting that there is a "presumption that Congress selected the language it intended to apply," and that "[w]here no ambiguity is apparent there is no reason to resort to rules of statutory construction," the Government asserts that a silent legislative history is reason to strictly construe the language of the statute and not resort to suppositions of congressional intent or meaning in Article 123a. Answer to Final Brief at 5, quoting *United States v. Ware*, 1 MJ 282, 285–86 (CMA 1976).

In *United States v. Lopez*, 35 MJ 35, 39 (1992), this Court explained that the

> military, like the Federal and state systems, has hierarchical sources of rights. These sources are the Constitution of the United States; Federal Statutes, including the Uniform Code of Military Justice; Executive Orders containing the Military Rules of Evidence; Department of Defense Directives; service directives; and Federal common law.... Normal rules of statutory construction provide that the highest source authority will be paramount, unless a lower source creates rules

that are constitutional and provide greater rights for the individual. . . .

Article 123a reads as follows:

*Any person* subject to this chapter *who*— (1) for the procurement of any article or thing of value, with intent to defraud; or (2) for the payment of any past due obligation, or for any other purpose, *with intent to deceive; makes, draws, utters, or delivers any check, draft, or order for the payment of money upon any bank or other depository, knowing at the time that the maker or drawer has not or will not have sufficient funds in, or credit with, the bank or other depository for the payment of that check, draft, or order in full upon its presentment, shall be punished as a court-martial may direct.* The making, drawing, uttering, or delivering by a maker or drawer of a check, draft, or order, payment of which is refused by the drawee because of insufficient funds of the maker or drawer in the drawee's possession or control, is prima facie evidence of his intent to defraud or deceive and of his knowledge of insufficient funds in, or credit with, that bank or other depository, unless the maker or drawer pays the holder the amount due within five days after receiving notice, orally or in writing, that the check, draft, or order was not paid on presentment. In this section, the word "credit" means an arrangement or understanding, express or implied, with the bank or other depository for the payment of that check, draft, or order.

(Emphasis added.)

■ The plain language of the statute does not support appellant's construction. The statute does not require that the maker be the account holder or a representative of the account holder. As the Government points out in its brief:

More recently, in *United States v. Desha,* 23 MJ 66[, 68] (CMA 1986), the Court noted:

In *United States v. Turkette,* [452 U.S. 576,] 580, 101 S.Ct. [2524,] 2527, the Supreme Court stated, "If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent

to the contrary, that language must ordinarily be regarded as conclusive.' *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)."

Answer to Final Brief at 6.

The legislative history is silent on this issue. The Senate Report that accompanied the bill proposing Article 123a indicates that the statute was enacted to fill in the gaps in the UCMJ and to allow for specific statutory authorization for bad check offenses. S.Rep. No. 659, 87th Cong., 1st Sess. (1961), *reprinted in* 1961 U.S.Code Cong. & Admin.News 3313–15. Prior to Article 123a's enactment, bad-check offenses were prosecuted under Articles 121, 133, and 134, "none of which is entirely appropriate and each of which presents technical difficulties in pleading and proof that sometimes result in failure to initiate charges or abortive prosecutions." *Id.* at 3313. Although the legislative history does not say what circumstances it understood to fall within this statutory language, it is clear that Article 123a was not meant to be a tool for prosecution of individuals who make an innocent error. Congress' primary concern was clearly the intent to defraud or deceive.

■ Even if the statutory language were ambiguous, following the hierarchy of rights, we would next look to the Executive branch for guidance. The President establishes the Manual for Courts–Martial by Executive Order. Part IV of the Manual includes sections on the elements of proof necessary to make out offenses under the UCMJ. Although the President's interpretation of the elements of an offense is not binding on this Court, absent a contrary intention in the Constitution or a statute, this Court should adhere to the Manual's elements of proof. Where the President's narrowing construction is favorable to an accused and is not inconsistent with the language of a statute, "we will not disturb the President's narrowing construction, which is an appropriate Executive branch limitation on the conduct subject to prosecution." *United States v. Davis,* 47 MJ 484, 486–87 (1998).

The President set forth the following elements of an Article 123a offense:

(a) That the accused made, drew, uttered, or delivered a check, draft, or order for the payment of money payable to a named person or organization;

(b) That the accused did so for the purpose of procuring an article or thing of value;

(c) That the act was committed with the intent to defraud; and

(d) That at the time of making, drawing, uttering, or delivery of the instrument the accused knew that the accused or the maker or drawer had not or would not have sufficient funds in, or credit with, the bank or other depository for the payment thereof upon presentment.

Para. 49b(1), Part IV, Manual for Courts–Martial, United States (1995 ed.).

The first three elements are not in dispute; appellant contests only the fourth element. To prove the fourth element, there must be proof that the accused knew that "the accused or the maker or drawer" had insufficient funds or credit for payment upon presentment of the checks. During his providence inquiry, appellant admitted that he knew the blank starter checks were not his at the time he filled them out and passed them on to various merchants. He understood that he was not the owner of the bank account upon which the checks were to be drawn. Thus, appellant, as the maker or drawer of the checks, knew he did not have either sufficient funds or credit to pay the checks.

Finally, the explanations of Articles 122 and 123 in the Manual for Courts–Martial imply that the drafters considered appellant's actions to fall within Article 123a.

[F]orgery is not committed by the genuine making of a false instrument even when made with intent to defraud. A person who, with intent to defraud, signs that person's own signature as the maker of a check drawn on a bank in which that person does not have money or credit does not commit forgery. Although the check falsely represents the existence of the account, it is what it purports to be, a check drawn by the actual maker, and therefore it is not falsely made. *See,* however, paragraph 49.

Para. 48c(2), Part IV, Manual, *supra.* Paragraph 49 of the Manual, referred to in the above passage, is the Article 123a bad checks offense. The explanation section to Article 123a provides further guidance on what is necessary to establish the offense of writing bad checks. The explanation states, in part, the following:

(10) *Knowledge. The accused must have knowledge,* at the time the accused makes, draws, utters, or delivers the instrument, *that the maker or drawer, whether the accused or another, has not or will not have sufficient funds in, or credit with, the bank or other depository* for the payment of the instrument in full upon its presentation. Such knowledge may be proved by circumstantial evidence.

(11) *Sufficient funds.* "Sufficient funds" refers to a condition in which the account balance of the maker or drawer in the bank or other depository at the time of the presentment of the instrument for payment is not less than the face amount of the instrument and has not been rendered unavailable for payment by garnishment, attachment, or other legal procedures.

(12) *Credit.* "Credit" means an arrangement or understanding, express or implied, with the bank or other depository for the payment of the check, draft, or order. *An absence of credit includes those situations in which an accused writes a check on a nonexistent bank or on a bank in which the accused has no account.*

Para. 49c, Part IV, Manual, *supra* (emphasis added).

Appellant argues that because three of the checks were honored and those merchants were not wronged, Article 123a is an inappropriate charge here. However, as this Court noted, the harm against which the bad check statute is meant to protect is "the intentional disrupting of 'the flow of and undermining the soundness of commercial paper....'" *United States v. Woodcock,* 39 MJ 104, 106 (CMA 1994), quoting *Commonwealth of Pennsylvania v. Burruss,* 380 Pa.Super. 272, 551 A.2d 580, 583 (1988), quoting *Commonwealth v. Mutnik,* 486 Pa. 428, 406 A.2d 516, 519 (1979).

The well-established test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner*, 25 MJ 324 (CMA 1987).

Because the language of the statute is clear, the legislative history is silent, and a reasonable factfinder could have found all the essential elements beyond a reasonable doubt, we hold that the evidence was legally sufficient to uphold appellant's conviction for the offense of writing bad checks.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges GIERKE and EFFRON concur.

SULLIVAN, Judge (concurring in the result):

The evidence of record in this case shows that appellant filled in his own name on blank bank starter checks given to the Murrays for their use on their new account. The Court of Criminal Appeals found on this evidence as follows:

> On November 25, 1994, appellant and Airman Basic (AB) Mageau were seated at a table in a Hardy's Restaurant in North Charleston, South Carolina. Appellant went to the restroom. On his return, AB Mageau pointed to a pouch similar to a backpack on a chair next to them. Appellant said, "Why don't we just grab it?" AB Mageau threw his jacket over the pouch and they took it with them when they left. Opening the pouch appellant and AB Mageau found a book issued by the Heritage Trust Federal Credit Union (HTFCU) belonging to Willie L. and Laurie C. Murray. Because these checks were "starter" checks, the Murrays' name and address were not imprinted. However, the pouch also contained credit cards on which the Murrays' name appeared. Appellant and AB Mageau went to a sporting goods store where appellant used one of the blank checks to purchase a backpack and a watch. In doing so he entered his correct name, address, and telephone number in the upper left hand corner, and signed with his own signature. Other purchases using additional blank checks followed including a hat, jeans, shirts, and socks. His purchases totaled $330.17. In addition, he used a check to obtain cash in the amount of $120.98. In all cases he entered his own name, address, and telephone number and signed his own name to the check. Only the cashed check was dishonored. The HTFCU reimbursed the Murrays in the amount of $330.17. Appellant subsequently reimbursed the HTFCU in the amount of $350.00 ($330.17 plus additional fees). Appellant's larceny conviction includes the theft of money from the Murrays' account in addition to the theft of the pouch.

Unpub. op. at 2.

I would resolve the substantive question of law raised in this case using the plain language of Article 123a, UCMJ, 10 USC §923a. The prosecution was required to show that appellant did "make[ ], draw[ ], utter[ ], or deliver[ ] any check ... knowing at the time that the maker or drawer has not or will not have sufficient funds in, or credit with, the bank ... for the payment of that check...." Art. 123a. Since the evidence in this case shows appellant was the maker of the check and that he had no funds whatsoever in the bank, he violated the plain terms of this statute. *See United States v. Davis*, 47 MJ 487–89 (Sullivan, J., dissenting).