UNITED STATES, Appellant

v

PARKER A. WADE, Airman Basic,
U. S. Air Force, Appellee

14 USCMA 507, 34 CMR 287

No. 17,245

April 24, 1964

*Major James Taylor, Jr.*, argued the cause for Appellant, United States. With him on the brief was *Colonel Emanuel Lewis*.

*Major Hugh J. Dolan* argued the cause for Appellee, Accused. With him on the brief was *Colonel Daniel E. Henderson, Jr.*

## Opinion of the Court

FERGUSON, Judge:

Tried before a special court-martial convened at Richards-Gebaur Air Force Base, Missouri, by the Commander, 328th Fighter Wing, the accused was found guilty of absence without leave and seven specifications of making bad checks with intent to deceive, in violation of Uniform Code of Military Justice, Articles 86 and 123a, 10 USC §§ 886, 923a, respectively. He was sentenced to bad-conduct discharge, forfeiture of $43.00 per month for three months, and confinement at hard labor for three months. The convening authority approved the sentence, and the supervisory authority, setting aside a single specification involving the bad checks, reassessed the punishment at the same level. The board of review found that the remaining bad check counts did not allege violations of Code, supra, Article 123a. It modified the findings of guilty to reflect bad check

**508**

offenses under Code, supra, Article 134, 10 USC § 934, and, finding the adjudged sentence appropriate, duly affirmed. The Judge Advocate General of the Air Force has certified its decision to us upon the following questions:

"1. WAS THE BOARD OF REVIEW CORRECT IN ITS DETERMINATION THAT A SPECIFICATION WHICH ALLEGES THE MAKING OF A CHECK 'WITH INTENT TO DECEIVE AND FOR THE PURPOSE OF OBTAINING LAWFUL CURRENCY' FAILS TO STATE AN OFFENSE UNDER ARTICLE 123a?

"2. IF THE ANSWER TO THE FIRST QUESTION IS IN THE AFFIRMATIVE, WAS THE BOARD OF REVIEW CORRECT IN ITS DETERMINATION THAT THE LESSER INCLUDED OFFENSE OF DISHONORABLE FAILURE TO MAINTAIN SUFFICIENT FUNDS IN VIOLATION OF ARTICLE 134 COULD BE APPROVED?"

The evidence need not long detain us,

in light of the issues certified. Suffice it to say that, at divers times and places, the accused made and uttered the checks in question and, in return, received varying sums of money. Typical of the six specifications here involved is the following:

"Specification 3: In that AIRMAN BASIC PARKER A. WADE, United States Air Force, 328 Air Base Squadron, did, at Belton, Missouri, on or about 17 November 1962, with intent to deceive and for the purpose of obtaining lawful currency, wrongfully and unlawfully make to Westhoff Trailer Park a certain check for the payment of money upon the citizens National Bank, Harrisonville, Missouri, in words and figures as follows, to wit:

Harrisonville Mo
*Town And State In Which Bank Is Located*

DATE Nov 17 1962

Citizens National
*Write Name Of Bank Or Trust Company On Above Line*

PAY TO THE
ORDER OF          Westhoff Trailer Park          $10.00
          Ten dollars and no/100          DOLLARS

I Hereby Certify That Sufficient Funds Are On Deposit In The Above Bank In My Name To Cover Amount Of This Check.

/s/ Parker A. Wade
328 AB RON RGAFB
AF 15381102

then knowing that he, the maker thereof, did not or would not have sufficient funds in or credit with such bank for the payment of said check in full upon its presentment."

The board of review held that the specifications did not allege offenses under Code, supra, Article 123a. It pointed out that the statute in question punished only two offenses, *i. e.*, the use of a worthless check, with intent to defraud, in order to obtain something of value, or its use, with intent to deceive, in order to satisfy a past due indebtedness or for any purpose other than obtaining something of value. It rejected the contention that a third offense might be hybridized through use of the purpose set forth in the first offense and the intent requisite to the second. In like manner, it refused to accord significant effect to the Government's argument that an intent to defraud might fairly be implied from the allegations of the specifications in question. However, the board concluded that the conduct averred was sufficient to allege a violation of Code, supra, Article 134. It

accordingly affirmed lesser offenses as to each specification involved.

Before us, the Government again urges that the counts are sufficient to set forth violations of Code, supra, Article 123a. First, it proposes to construe the allegation of the making of a worthless check with an "intent to deceive . . . for the purpose of obtaining lawful currency" to be the equivalent of an intent to defraud as required by the initial subsection of the statute. Secondly, it argues that, in any event, an intent to deceive is alleged, and the making of a worthless check with that intent and for the purpose of obtaining lawful currency is a violation of the second subsection of the enactment.

We may swiftly dispose of the initial contention for, no matter how artfully it is framed, the Government's argument essentially equates the knowledgeable making of a bad check with intent to deceive to the commission of the same act with intent to defraud. But the two states of mind are, as pointed out by the board of review, in light of the charges before us, essentially different.

**509**

United States v Leach, 7 USCMA 388, 22 CMR 178; Hammerschmidt v United States, 265 US 182, 68 L ed 968, 44 S Ct 511 (1924); United States v Thompson, 12 USCMA 438, 31 CMR 24; United States v Ebarb, 12 USCMA 715, 31 CMR 301. Indeed, in United States v Wilson, 13 USCMA 670, 33 CMR 202, we specifically refused to conclude that an intent to deceive was identical to an intent to defraud, and held that limitation of allegations to the former resulted in the failure of a count to charge the offense of forgery. See, to the same effect, regarding the offense now before us, paragraph 202a, Addendum to the Manual for Courts-Martial, United States, 1951, January 1963. We hold, therefore, that the specifications, lacking expressly an averment of an intent to defraud, do not set forth a violation of the first subsection of Code, supra, Article 123a.

The Government's next argument is that the specifications in any event allege a violation of the second subsection of Code, supra, Article 123a, for an intent to deceive is expressly averred and the statute seeks to punish the making or utterance of worthless checks, so characterized, regardless of the purpose for which they are written. Again, we disagree, for we deal with a statute having a peculiar background.

The particular portion of Article 123a here involved punishes the making or uttering of a worthless check:

"(1) for the procurement of any article or thing of value, with intent to defraud; or

"(2) *for the payment of any past due obligation, or for any other purpose, with intent to deceive.*" [Emphasis supplied.]

Essentially, the United States argues that the phrase "for any other purpose" was intended to, and does encompass the writing of a check in order to obtain any article or thing of value, as set forth in the first subsection, or, as alleged here, for the purpose of obtaining lawful currency. We believe, however, that the phrase "for any other purpose" must be read in light of the other language in the same clause of the statute, i. e., "for the payment of any past due obligation" and to exclude articles and things of value as mentioned in the first subsection of the Article. Such an interpretation is but an application of the familiar principle of *ejusdem generis* and has the effect of reconciling the different provisions so as to make them harmonious and sensible. United States v Curtin, 9 USCMA 427, 26 CMR 207.

Such also is the construction afforded the statute by those who sought its enactment, for the Addendum to the Manual, supra, expressly notes that "'For any other purpose' includes all purposes *other than* the payment of a past due obligation *or the procurement of any article or thing of value.*" (Emphasis supplied.) Addendum to Manual, supra, paragraph 202a. While Manual interpretations of substantive law are in nowise binding upon this Court, they are entitled to some recognition. In this instance, the Manual correctly points out the intent of Congress to create only two bad check offenses under the act and not to provide for a hybrid crime consisting of the intent taken from one section of the Article and the purpose from another. Cf. House Report No. 583, 87th Congress, 1st Session; Senate Report No. 659, 87th Congress, 1st Session; United States v Smith, 13 USCMA 105, 32 CMR 105. We conclude, therefore, that the counts in question do not allege offenses in violation of Code, supra, Article 123a.

The second certified question inquires whether the board of review acted correctly in finding that, despite the failure of the specifications to allege offenses in violation of Code, supra, Article 123a, each set forth the offense of dishonorable failure to maintain sufficient funds on deposit to meet such check upon its presentment, in violation of Code, supra, Article 134, 10 USC § 934. In so concluding, the board of review relied upon United States v Margelony, 14 USCMA 55, 33 CMR 267.

In the *Margelony* case, this Court, over the author's dissent, held that

510

Code, supra, Article 123a, did not preempt the offense of dishonorable failure to maintain sufficient funds to meet the payment of negotiable paper upon presentment and that such was lesser included in a specification charging the making or uttering of a worthless check with intent to defraud. But the board of review failed to observe the distinction between that case and the one now presented. There, we dealt with specifications properly alleging a violation of Code, supra, Article 123a, and in which an intent to defraud was expressly averred. While the Court dwelt in part upon the allegation—also present in these specifications—that accused "would not have sufficient funds" for payment of the check on presentment, the averment of an intent to defraud also bore heavily on its decision that the count implicitly stated dishonorable conduct which, as we noted in United States v Brand, 10 USCMA 437, 28 CMR 3, is "characterized by deceit, evasion, false promises, . . . or other distinctly culpable circumstances." Moreover, we dealt in that case with the issue whether the ordinary charge in violation of Code, supra, Article 123a, included, as a matter of law, the lesser offense under Code, supra, Article 134. Here, however, we are faced with the entirely different proposition whether an incomplete allegation under the former statute—a meaningless jumble—is sufficient to place the accused fairly on notice of a violation of the latter. In absence of the allegations necessary to find either offense under Article 123a, we conclude that it is not.

Finally, we advert, as we did in *Margelony*, supra, to the basic purpose behind the enactment of Code, supra, Article 123a. As General Kuhfeld, The Judge Advocate General of the Air Force, made crystal clear in his presentations to the Congressional Committees considering these bills, the services experienced a great deal of difficulty and confusion in administering the then extant law regarding bad checks. As appellate defense counsel so cogently argue in their brief, attempts to sustain unlimited charges under the act or lesser degrees thereof, "can only lead to a proliferation of offenses even more confusing than that which existed prior to enactment of the military check statute." We decline so to extend Article 123a or our decision in *Margelony*. Congress intended to simplify the law of worthless checks rather than to complicate it, and we prefer not to enlarge our construction of its action in order to overcome a draftsman's error at the price of creating new and unsanctioned crimes.

In sum, then, we hold that military law presently provides for three bad check offenses. Two of these crimes are specifically delineated in Code, supra, Article 123a. The third is found in the dishonorable failure to maintain sufficient funds on deposit to meet a check upon its presentment. United States v Margelony, supra. Reviewing the presentation by the armed services to the Congress, that body's legislative response, and the contemporary interpretation of its action, Manual, supra, paragraph 202a, it is obvious that the whole purpose of the new scheme was to simplify the law regarding bad checks and to eliminate what seemed to be insurmountable difficulties in charging the right offense and obtaining a proper conviction. Without question, Congress intended that its action have some cogent effect, and we believe our holding herein conforms to the Congressional intent. To go beyond the three crimes set out above, would only reintroduce the complications which Code, supra, Article 123a, was designed to eliminate and set at nought the standards which it introduced into the Code. We decline, therefore, the Government's invitation to depart from the statute and create a new series of bad check offenses which will only serve to return it to the confusion which it found extant prior to the enactment of the new Article. We are, of course, not here concerned with possible violations of Code, supra, Article 121, 10 USC § 921, nor should there be any generalized concept drawn from our construction of a statute with the unusual background here involved. Cf. United States v Granberry, 14 USCMA 512, 34 CMR 292.

The first certified question is answered in the affirmative, and the second certified question is answered in the negative.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Air Force. The board may reassess the sentence on the basis of the findings of guilty of absence without leave or order another trial upon proper charges and the penalty.

Chief Judge QUINN and Judge KILDAY concur.