**UNITED STATES**

v.

**Airman First Class Courtney A. CLARKE, FR 072–64–8700, United States Air Force.**

**ACM S28075.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 13 Feb. 1989.

Decided 28 Sept. 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Laurence M. Soybel.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Captain Morris D. Davis and Captain Joseph V. Treanor, III.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

## DECISION

KASTL, Senior Judge:

The appellant, Airman First Class Clarke, was tried for nine specifications of making and delivering checks with insufficient funds, violations of Article 123a, UCMJ. Upon pleas of guilty, he was found guilty by a special court-martial with members. His sentence is a bad conduct discharge, three months confinement, forfeiture of one half pay per month for three months[1], and reduction to airman basic. On appeal, he raises four matters for our consideration.

### I. "Kiting" Checks

■ Clarke argues that the record fails to support his guilty plea as to three of the check offenses. We disagree. The appellant's activities involved "kiting"—rapidly exchanging checks and manipulating deposit accounts so as to create a false bank balance. See 37 C.J.S. Forgery 532 (1943). Theoretically, such an operation can continue indefinitely. In fact, the "buck stops" for one reason or another when one bank becomes suspicious or another bank cancels the account upon which the checks are drawn. In *Baskerville v. State*, 23 Md. App. 439, 327 A.2d 918, 919–920 (Md.Ct. App.1974), a well-crafted opinion, the author judge explains "kiting" as follows:

As in a 'shell game' at a country carnival, a "check kiting" scheme has the elements of the crime of false pretenses moving back and forth from one transaction to the next so rapidly under the hands of a skilled manipulator that the ultimate resting place of a particular element is exceedingly difficult to locate ... Like a juggler with three balls aloft but only two hands, the 'kiting' operation, once begun, cannot stop, lest the uncovered ball "bounce."

The appellant suggests that his guilty plea was questionable. He argues in effect that though he had little or no money when he wrote the checks, he might have deposited sufficient funds into his accounts to take care of each check *at the time it was presented for payment*. In short, the defense argues that: (1) the mechanics of a possible defense under Article 123a were insufficiently explained to Clarke during the guilty plea inquiry; and (2) failure to fully develop these matters on the record requires us to find the providency inquiry inadequate under the standard of *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 137 (1969).

We reject the appellant's assertion. In this case, we are convinced that the military judge sufficiently verified the factual circumstances set forth by the accused in the stipulation of fact to objectively support his guilty pleas to all nine specifications—including those involved in the "kiting" operation.

■ It is crystal clear that Clarke at no time labored under any misapprehension as to the status of his accounts. During the *Care* inquiry, the appellant admitted he knew that his funds would prove insufficient when the game of financial musical chairs ended and the checks were presented for payment. *United States v. Mitchell*, 35 C.M.R. 790, 800 (A.F.B.R.1965) and *United States v. Dicus*, 33 C.M.R. 879, 882 (A.F.B.R.1963). *See also United States v. Chancelor*, 35 C.M.R. 897, 900 (A.F.B.R.

---

1. We recognize the announced sentence fails to square with the requirement of R.C.M. 1003(b)(2) that partial forfeitures be stated in the exact amount in whole dollars to be forfeited per month. We will correct this sentencing error at the conclusion of our discussion of the other assigned errors.

1965). Examining the inquiry as a whole, we are convinced that there was no fatal deficiency. *See United States v. Pretlow*, 13 M.J. 85, 89 n. 6 (C.M.A.1982); *United States v. Bowers*, 20 M.J. 1003, 1004 (A.F. C.M.R.1985). Our holding is strengthened by the principle that when a plea of guilty is attacked for the first time on appeal, the facts will be viewed in the light most favorable to the Government. *United States v. Hubbard*, 28 M.J. 203, 209 (C.M.A.1989) (Cox, J., concurring).

## II. Testimony of Appellant's Commander

Clarke also argues that the military judge erred during presentencing by permitting the appellant's commander to testify over defense objections that he had initiated administrative discharge proceedings against Clarke for minor misconduct under Air Force Regulation 39–10, *Administrative Separation of Airmen* (1 October 1984). We agree.

During a motion in limine, the appellant sought to preclude his commander from so testifying. Defense counsel was unsuccessful and the commander related as follows:

Q: Sir, as a commander, did you ever have an opportunity to personally observe his duty performance?

A: Yes, I did.

Q: How many times?

A: Several times.

Q: And how would you characterize that duty performance?

A: Good.

Q: Now despite him having this characterization for his duty performance, did you ever have an opportunity to initiate any type of administrative action on the accused?

A: Yes, I did.

Q: What type of action was that, sir?

A: 39–10 action.

Q: And what was the basis for that, please?

A: Minor misconduct.

Q: What was your recommendation as to probation and rehabilitation, sir?

A: I recommended him for probation and rehabilitation.

Q: When was that recommendation made, sir?

A: That was made in August of 1987.

Q: Did he accept the probation and rehabilitation?

A: Yes, he did.

Q: What type of period was this for?

A: It was to begin in September of 1987 and go for one year.

Q: Sir, based upon everything that you know as his, commander, observation of duty performance and this probation and rehabilitation that has previously been extended, what is your opinion as to his rehabilitative potential in the United States Air Force?

A: I don't believe he has any now.

TC: Thank you very much, sir.

We hold that the military judge erred in permitting this testimony. Our analysis is based upon the recent Court of Military Appeals decision in *United States v. Ohrt*, 28 M.J. 301 (C.M.A.1989) and the pertinent Rule for Courts–Martial.[2]

■ R.C.M. 1001(b)(5) provides that:

The trial counsel may present, by testimony or oral deposition ... evidence, in the form of opinions concerning the accused's previous performance as a servicemember and potential for rehabilitation. *On cross-examination, inquiry is allowable into relevant and specific instances of conduct.*

(emphasis added). The Rule appears relatively clear: *The prosecution may present evaluations of the accused's military worth but is barred from inquiring into "specifics" unless the defense first opens that entranceway.* In this particular case,

---

**2.** At the time the military judge ruled, he did not have the benefit of the Court of Military Appeals decision in *United States v. Ohrt*, 28 M.J. 301 (C.M.A.1989). *See also United States v. Wingart*, 27 M.J. 128, 133–134 (C.M.A.1988), *United States v. Horner*, 22 M.J. 294, 295 (C.M.A.1986), and Vowell, *To Determine an Appropriate Sentence: Sentencing in the Military Justice System*, 114 Mil.L.Rev. 1, 57–58 (Fall 1986).

the triers of fact discovered on direct examination two matters prohibited by the pertinent Rule: (a) that his unit had sought to discharge the appellant for otherwise-unidentified "minor misconduct"; and (b) that rehabilitation efforts beginning in September 1987 and lasting one year in regard to that "minor misconduct" had misfired, at least by the time the present charges had been preferred in January 1989.

As we see it, *Ohrt* and R.C.M. 1001(b)(5) work in tandem; they provide the following guidance in this area: (1) A commander is required to show that he is not a stranger to the accused facing sentencing by the court-martial; this is the "foundation" required by *United States v. Ohrt*, 28 M.J. at 304. (2) Once such foundation is laid, the commander can verify that—given this accused and his work—the commander has been able to form a rational, personalized opinion as to rehabilitation potential. *Ibid.* (3) The commander may then offer such conclusion. *However, under R.C.M. 1001(b)(5), the commander cannot go further and give details of specific wrongdoing unless and until the defense first opens the door.*

■ Applying these guidelines to the case at hand, we conclude that the military judge's ruling admitting the testimony was in error since it violated the plain language of R.C.M. 1001(b)(5). Here, the triers of fact knew details of specific wrongdoing they should not have known under R.C.M. 1001(b)(5)—that the appellant was guilty of "minor misconduct" which led to an administrative discharge action and that he was now a "two-time loser" who had flubbed a chance at rehabilitation and gotten into further scrapes which led to a court-martial.

It can be argued—with good reason—that it is pertinent and relevant for voting members to know that an accused has failed to progress despite rehabilitation efforts by his commander. However, the language of Rule 1001(b)(5) is stubborn and irreconcilable to admitting the data upon that basis. Both failure to complete a rehabilitation program and "minor misconduct" are specific matters; and they may not be produced under R.C.M. 1001(b)(5) unless and until the defense opens the door.[3]

### III. Voir Dire Challenges In Members' Presence

■ Clarke complains that he was forced to use his peremptory challenge in front of voting members, which conflicts with the procedure set forth in R.C.M. 912(f)(3). He points out that trial defense counsel was placed in an untenable position since he wished to challenge the president, Colonel T, yet was forced to do so before the other members. The Government had announced that it had no challenges for cause; this put the defense into a "no-win situation," says the appellant, since an open challenge might cause the appellant to be viewed in a negative manner by the members. For this reason, the defense argues that the waiver doctrine should not apply.

The procedure was irregular, and we remind military judges that the preferred practice is that contained in the Rule: Chal-

---

3. We emphasize that certain minor acts of misconduct were properly before the court *upon another basis:* records of non-judicial punishment and letters of reprimand were admissible under R.C.M. 1001(b)(2) as personnel records of the accused. *See also* AFR 111–1, *Military Justice Guide* (30 September 1988), paragraph 13–4.

Based on pre–1984 Manual for Courts–Martial cases, the discharge package itself likely could not qualify for admission. *See United States v. Newbill*, 4 M.J. 541 (A.F.C.M.R.1977); *but see United States v. Hicklin*, 8 M.J. 568 (A.C.M.R. 1979). For today's rule, see AFR 12–50, *Disposition of Air Force Documentation* (14 May 1984) Table 35–9, Rule 1 and Note 2.

We also recognize that *United States v. Susee*, 25 M.J. 538 (A.C.M.R.1987), was cited with approval in *United States v. Ohrt*. The Army Court was complimented for being "on target" with their application and construction of Rule 1001(b)(5). *Susee* can be read as fact-specific. There, evidence of the appellant's absence without leave had originally come before the members as an item contained in Susee's personnel records; thus, it was not error for the First Sergeant to use that AWOL as a "point of reference from which to begin" his testimony. *United States v. Susee*, 25 M.J. at 540. There is general language in *Susee* which may be at odds with our rationale here, particularly as to whether permissible on direct examination. The Army Court held the reference proper in a specific factual setting. We find today, on different facts, to the contrary.

lenges should take place outside the presence of the voting members. Be that as it may, we find that the defense waived this matter. Mil.R.Evid. 103(a). *See generally United States v. Schmidt,* 16 U.S.C.M.A. 200, 35 C.M.R. 356, 360 (1966) and *United States v. Sanders,* 20 C.M.R. 692, 698 (A.F. B.R.1955), both pre-Rules cases.

### IV. *Multiplicity*

The appellant's contentions concerning multiplicity are resolved against him. *United States v. Harrison,* 4 M.J. 332 (C.M.A.1978).

### V. *Testing for Prejudice*

■ As we have noted in Section II, *supra,* R.C.M. 1001(b)(5) was violated when the court-martial gained knowledge of both Clarke's "minor misconduct" which resulted in an administrative discharge action and his failure to become a model airman despite a program of rehabilitation. Nevertheless, we are convinced that, as to sentencing, no prejudice occurred to the substantial rights of the appellant.

By the time they were ready to sentence Clarke, the members properly had before them various records of the appellant through another permissible presentencing channel, R.C.M. 1001(b)(2), as "personnel records of the accused." By this path, the members had available: (1) a record of non-judicial punishment for violations of Articles 91, 123a, and 134, UCMJ; (2) a letter of reprimand for both assaulting his wife and writing a check on a closed account; and (3) various comments in airman performance reports indicating that Clarke failed to conform to Air Force standards off-duty, fell short of military appearance requirements, and had experienced financial and personal problems. These are what undoubtedly led to the administrative discharge action.

The sentence here—extending to a bad conduct discharge, three months confinement, three months forfeitures, and reduction to the lowest enlisted pay grade—is below the maximum permissible in a special court-martial. Furthermore, the adjudged sentence was moderate, given the appellant's conduct and what might be gleaned from his legally-admissible personnel records. Accordingly, we are convinced that, given all the admissible evidence available to the members, the sentence was not skewed by any inadmissible matters. It follows that we need not entertain the possibility of returning the record to the convening authority for a rehearing on sentence.

At the beginning of this opinion, we noted that partial forfeitures must be stated in an exact amount. *See* R.C.M. 1003(b)(2) and *United States v. Frierson,* 28 M.J. 501 (A.F.C.M.R.1989) and cases cited. Accordingly, we correct the ministerial sentencing error by approving so much of the sentence as provides for a bad conduct discharge, three months confinement, forfeitures of $215.00 pay per month for three months, and reduction to airman basic.

The findings of guilty and the sentence (as modified) are correct in law and fact and, upon assessment of the entire record, are

AFFIRMED.

Senior Judge LEWIS and Judge BLOMMERS concur.