OPINION OF THE COURT
LEONARD, Senior Judge:
Appellant alleges four errors concerning the propriety of his convictions for Article 123a, UCMJ, 10 U.S.C. § 923a, insufficient funds checks. He asks us to reverse convictions for checks written for a gift, from one checking account for deposit in another checking account, and to satisfy alimony and child support obligations to his ex-wife.[1] He also contends that insufficient evidence exists to support his convictions for assault of a child under the age of 16 years. We find merit in only one of appellant’s contentions and set aside his convic *526 tion for writing an insufficient funds check for alimony and child support because of incorrect charging of that offense.
I Gift Checks
Facts
Appellant and Elizabeth Dodson met through her son and became friends. She had been sick, unable to work, and experiencing financial problems. As a gift to Ms. Dodson, appellant wrote a check, dated 8 February 1989, payable to her in the amount of $2700 drawn upon an account at the American Express Military Banking Facility, Kunsan, Korea. Ms. Dodson deposited the check in her checking account at the First Interstate Bank on Nellis Air Force Base, Nevada. First Interstate placed appellant’s check in banking channels and it was returned to them on 15 February 1989, without payment, stamped with the notation “account closed.” On 21 February 1989, First Interstate tried to contact Ms. Dodson without success. Because appellant also had an account with First Interstate, they contacted him instead. Appellant agreed to cover the check and service charges to Ms. Dodson’s account due to the returned check. He did so on 23 February 1989.
Appellant wrote another gift check to Ms. Dodson for $900, on 17 February 1989, drawn on the same closed account in Kunsan, Korea. Ms. Dodson also deposited this check into her account, but First Interstate put a hold on the check and did not give her immediate credit for the $900. This check also came back without payment stamped “account closed.”
Appellant’s testimony confirmed Ms. Dodson’s testimony that he wrote both checks as a gift to help her with financial problems. He admitted that he knew when he gave her the checks that he did not have any money in his account at the American Express Banking Facility, Kunsan, Korea. He also admitted that by giving her the checks he misrepresented to her there would be money in the account to cover the checks. However, he denied any wrongful intent or any imposition of hardship upon Ms. Dodson.
The government charged both checks written to Ms. Dodson as violations of Article 123a, UCMJ. The specifications alleged appellant, “with the intent to deceive and for the purpose of giving a gift or for some other purpose,” wrongfully and unlawfully made and uttered the checks to Ms. Dodson knowing he did not have sufficient funds for payment upon presentment. Court members convicted appellant of both offenses.
Analysis and Law
Appellant contends that the “for any other purpose” clause of Article 123a should not include writing checks for gifts. According to his analysis of provisions of the Uniform Commercial Code and Nevada statute,[2] gifts are not effective until actual delivery or transfer of property, and checks do not constitute delivery but only a promise of future delivery. Therefore, he argues that gift checks are not enforceable and appellant was not required to maintain any balance in his account to cover an unenforceable check. We disagree with this analysis.
Article 123a provides for criminal punishment of military members who make, draw, or utter checks without sufficient funds. Such unlawful making, drawing, or uttering of checks may be “for the procurement of any article or thing of value, with intent to defraud.” Article 123a(l). Or, bad checks may be “for the payment of any past due obligation, or for any other purpose, with intent to deceive.” Article 123a(2).
Case law limits the extent of the term “for any other purpose.” Insufficient funds checks written for obligations arising from legal or illegal gambling are not punishable under the UCMJ. United States v. Wallace, 15 U.S.C.M.A. 650, 36 C.M.R. 148 (1966); MCM, App. 21, paragraph 49c, A21-96.1 (1984). The Wallace Court based its opinion on the concept that gambling is *527 against public policy and courts should not support the enforcement of obligations against public policy. 36 C.M.R. at 150. The Court held that the offices of criminal justice should not extend to taking of punitive measures for nonpayment of gambling obligations. Wallace, 36 C.M.R. at 151.
We elect not to extend the rationale of Wallace to appellant’s case. A thorough search of military cases reveals no court refusing to uphold a conviction for an insufficient funds gift check. State courts considering the issue are split depending on their interpretation of their state’s bad check statute. Two courts have noted that the American Law Institute Model Penal Code criminalizes bad checks written as gifts. See Commonwealth v. Burruss, 380 Pa.Super. 272, 551 A.2d 580 (1988); Vermont v. Foley, 140 Vt. 643, 443 A.2d 452 (1982). Another court, construing a Virginia statute, found that statute did not criminalize insufficient funds gift checks. Sylvestre v. Commonwealth, 10 Va.App. 253, 391 S.E.2d 336 (1990).
The majority view of the States adopting the Model Penal Code apparently supports criminalizing gift bad cheeks. See Burruss, 551 A.2d at 583-584 n. 3; see also American Law Institute, Model Penal Code and Commentaries, Part II, § 224.5, at 316 (1980). According to the Burruss Court, the negotiable aspect of gift checks provides the rationale for treating insufficient funds gift checks as criminal offenses. We agree.
Regardless of the original purpose or legal enforceability of a gift check in a civil suit, once the payee acquires possession of it, the check becomes a negotiable instrument. The payee will normally indorse the check and put it into commercial channels. In return, the payee may receive bank credit, goods, or services for the check. Persons or commercial enterprises receiving the check from the payee will rely upon the validity of the check in extending bank credit or providing goods and services to the payee. The resulting damage from a bad gift check can leave the same trail of victims as a check negotiated directly for goods, services, or obligations. The facts of this case illustrate this negotiable aspect of gift checks. Ms. Dodson took the first check to her bank, indorsed it to the bank, and obtained bank credit for it. She then wrote checks on her account relying on the validity of appellant’s check. A number of her checks were dishonored when appellant’s check failed to clear. Despite appellant’s quick action in making good on the check, Ms. Dodson and her bank experienced significant inconvenience in rectifying the situation.
Unlike checks written for gambling debts, we find no public policy reason against criminalizing insufficient funds checks written as gifts. On the contrary, we agree with the view that the potential commercial impact of such checks supports criminalization. Therefore, we hold that the “for any other purpose” provision of Article 123a, UCMJ, applies to the checks appellant wrote as gifts to Ms. Dodson.
II Checks from One Account to Another Facts
Appellant wrote nine checks on his closed account at the American Express Banking Facility, Kunsan, Korea, to his accounts at the Nevada Federal Credit Union and the First Interstate Bank. He wrote each check payable to the credit union, bank, or cash for deposit to his account with the bank or credit union. All nine checks came back without payment, stamped either “insufficient funds” or “account closed.” Until the checks began coming back without payment, both Interstate Bank and the credit union allowed appellant to draw against the account balance created by deposit of the checks. After checks were returned without payment, the bank and credit union no longer gave appellant immediate credit on checks he deposited. The government charged all nine dishonored checks as violations of Article 123a by unlawfully making and uttering, with the intent to defraud, insufficient funds checks for the procurement of lawful currency or a thing of value.
The issue presented to us is whether using checks to attempt transfers of funds *528 from one account to another amounts to “procurement of a thing of value” under Article 123a. Appellant contends that, by attempting to transfer funds from the zero-balance Kunsan account, he merely shifted “nothing” from one account to the other. We disagree and find appellant violated Article 123a when he made and uttered the nine checks.
Analysis and Law
“For the procurement of” means “for the purpose of obtaining.” MCM, Part IV, paragraph 49c(5) (1984). “Article or thing of value” is defined as:
“Article or thing of value” extends to every kind of right or interest in property, or derived from contract, including interests and rights which are intangible or contingent or which mature in the future.
MCM, Part IV, paragraph 49c(8) (1984).
In this case appellant engaged in a scheme similar to check-kiting whereby he used the long “float” or check clearance time involved with an overseas bank branch to obtain bank credit in accounts at his stateside bank and credit union. See United States v. Clarke, 29 M.J. 582, 583 (A.F.C.M.R.1989) (check-kiting defined). He testified he used that bank credit to write additional checks to make gifts to the Holst family, Ms. Dodson, and others. After the banks became wise to his scheme, they no longer gave him immediate credit and forced him to make good on previous dishonored checks. Using infusions of cash from his uncle and grandfather, appellant covered all the dishonored checks.
We have no difficulty in finding appellant made and uttered the checks in question “for the purpose of obtaining thing[s] of value.” Initially, he obtained bank credit for his checks. Undoubtedly, he continued to make and utter the worthless checks relying on the likelihood he would obtain additional bank credit. Such bank credit created a fictitious balance for appellant and gave him the ability to use the accounts as credit references or to write additional checks. Such bank credit clearly constitutes a “thing of value.” See Clarke, 29 M.J. at 583; United States v. Mitchell, 35 C.M.R. 790, 798 (A.F.B.R.), pet. denied, 35 C.M.R. 478 (1965); United States v. Dicus, 33 C.M.R. 879, 881 (A.F.B.R.1963).
Ill Check for Alimony and Child Support Facts
In October 1988, appellant wrote a check for $900 payable to his ex-wife. Appellant had an alimony and support obligation to her and their children in the amount of $900 per month. He wrote the check on the closed account at the American Express Banking Facility, Kunsan, Korea, and appellant’s ex-wife received no payment for the check. He admitted the American Express account had a zero balance at the time he wrote the check and he knew the check would not clear when presented. Although he admitted that sending his ex-wife the check for $900 misrepresented to her that $900 would be in the account to pay the check, he denied any intent to defraud her. He insisted he wrote the bad check deliberately to force his ex-wife to restore contact and visitation with their children. He further testified that, when she contacted him, he promptly sent her a valid check for $1,600 that cleared when she presented it for payment. Appellant’s ex-wife testified that she received the initial check, deposited it, and the check came back without payment. She admitted receiving a second, valid check for $1,600 shortly after contacting appellant about the dishonored $900 check. She did not contradict appellant’s testimony concerning denial of contact and visitation with their children.
The government charged the dishonored check to appellant’s ex-wife as an Article 123a(l) offense.[3] They alleged appellant, “with intent to defraud and for the procurement of a thing of value,” unlawfully made and uttered an insufficient funds check to his ex-wife. The military judge instructed the court members on “procurement of a thing of value” and “intent to defraud” and they convicted appellant of the offense as charged.
*529 Analysis and Law
Appellant asserts two errors concerning his conviction for making and uttering the insufficient funds check to his ex-wife. First, he contends the government charged and attempted to prove this offense under the wrong section of Article 123a. He argues that the writing of a check to satisfy payment of alimony and child support cannot be for “procurement of any article or thing of value,” under Article 123a(l) but must be for “payment of any past due obligation or for any other purpose” under Article 123a(2). Secondly, appellant maintains that the government failed to prove appellant intended to defraud when he wrote the check in question.
Both appellant’s contentions have merit; but we need only address the first issue to dispose of the offense. As we stated above, Article 123a, UCMJ, contains two separate theories to support convictions for making and uttering insufficient funds checks. Article 123a(l) applies to procurement of any article or thing of value with the intent to defraud. Article 123a(2) covers the payment of any past due obligation, or for any other purpose, with the intent to deceive. The two theories are not interchangeable. In United States v. Wade, Judge Ferguson, referring to congressional hearings and specifically to the presentations Air Force Judge Advocate General Kuhfeld made to Congress, found the intent of Congress in enacting Article 123a to be:
[T]o create only two bad check offenses under the act and not to provide for a hybrid crime consisting of the intent taken from one section of the Article and the purpose from another.
14 U.S.C.M.A. 507, 34 C.M.R. 287, 290 (1964); see also House Rep. No. 583, 87th Congress, 1st Sess.; Senate Rep. No. 659, 87th Congress, 1st Sess.
In Wade, the Court found specifications that mixed allegations from both Article 123a(l) and Article 123a(2) by alleging the making of bad checks for the purpose of obtaining lawful currency, with the intent to deceive, did not state offenses under Article 123a. Wade, 34 C.M.R. at 290. The Court held that each category under Article 123a was separate and distinct. Id.
The record is unclear as to whether appellant sent the dishonored check to his ex-wife for past due alimony and child support or for the current month’s payment. However, this distinction does not affect the proper characterization of the offense. If he paid for a past due obligation of child support and alimony, the offense should have been charged and proven under Article 123a(2). Past due obligations include: “an obligation to pay money, which obligation has legally matured before making, drawing, uttering, or delivering the instrument.” MCM, Part IV, paragraph 49c(9) (1984).
If appellant sent the check for the current month’s support and alimony, the obligation would still be “legally matured” at the time the check was mailed. If for some reason the support and alimony obligation were not “legally matured,” the “for any other purpose” clause of Article 123a(2) would apply. This clause includes “paying or purporting to pay an obligation that is not yet past due.” MCM, Part IV, paragraph 49c(7) (1984); see also United States v. Green, 36 C.M.R. 882 (A.F.B.R.1966).
We disagree with the government’s assertion that satisfaction of a support obligation is a “thing of value” because by paying it appellant preserved his freedom, an interest or right which is intangible or contingent or which matures in the future. MCM, Part IV, paragraph 49c(8) (1984). This argument confuses the purpose of writing the check, i.e., to satisfy his support obligation, with the possible ramifications of not paying the support obligation.
The government also argues that satisfaction of support obligations is analogous to insurance coverage or rental of property, both held to be “things of value.” See United States v. Ward, 35 C.M.R. 834 (A.F.B.R.1965). We disagree. Insurance coverage is a contractual interest and a leasehold is a property right. Both of these interests fall squarely within the Manual definition of “article or thing of value” contained in MCM, Part IV, paragraph 49c(8) (1984). On the other hand, *530 support payments are a legal obligation fitting clearly in the Manual definition of a past due obligation or “for any other purpose.” MCM, Part IV, paragraphs 49c(7) and (9) (1984).
Appellant’s dishonored check to his ex-wife should have been charged under Article 123a(2) as an insufficient funds check made and uttered with the intent to deceive for the payment of a past due obligation, or for any other purpose. The government’s improper charging of the offense resulted in the court members being provided incorrect instructions and finding appellant guilty under an Article 123a theory that could not apply to the facts of the offense. Under such circumstances, it is impossible for us to determine whether appellant would have been convicted of an Article 123a offense for this check had the offense been properly charged and the court members properly instructed. See United States v. O’Hara, 14 U.S.C.M.A. 167, 33 C.M.R. 379, 382 (1963); United States v. Roberson, 12 U.S.C.M.A. 719, 31 C.M.R. 305, 308 (1962); United States v. Sicley, 6 U.S.C.M.A. 402, 20 C.M.R. 118, 126 (1955) (instructions on general theory or wrong theory of larceny created danger court members reached finding of guilty on theory inapplicable to facts). Therefore, we set aside appellant’s Article 123a, UCMJ, conviction on specification 4 of Charge I.
The offense of dishonorably failing to maintain sufficient funds to pay a check upon presentment, under Article 134, UCMJ, 10 U.S.C. § 934, is a lesser included offense of both types of Article 123a offenses. MCM, Part IV, paragraph 49d(l) (1984). Ordinarily, upon setting aside a conviction under Article 123a, we would approve a conviction of this lesser included offense. However, under the peculiar facts of this case, we are not convinced beyond a reasonable doubt that appellant is guilty of a dishonorable failure to maintain sufficient funds to pay this check upon presentment. Therefore, after consideration of all the facts and the interests of judicial economy, we elect to order specification 4 of Charge I dismissed. United States v. Roberts, 32 M.J. 681, 684 (A.F.C.M.R. 1991).
IV Sufficiency of Evidence for Assault Convictions
By exceptions and substitutions to offenses alleging indecent acts with a minor, court members convicted appellant of assaulting the 12-year-old son of another Air Force active duty member. Appellant contends these convictions are legally and factually insufficient and must be set aside. We disagree.
Reviewing the convictions for legal sufficiency, we find both convictions supported by evidence from which a reasonable fact finder could have found all the essential elements of the offenses beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); United States v. Turner, 25 M.J. 324 (C.M.A.1987). Further, making our required statutory review for factual sufficiency, we are convinced of appellant’s guilt of both offenses beyond a reasonable doubt. Article 66(c), UCMJ, 10 U.S.C. § 866(c); Turner, 25 M.J. at 325.
V Conclusion
Having set aside one of appellant’s convictions, we will reassess his sentence. Under the circumstances of this case, we are confident we can accurately determine the sentence that would have been adjudged absent the erroneous conviction. United States v. Peoples, 29 M.J. 426 (C.M.A.1990). Considering only evidence properly before the court members at trial, we reassess appellant’s sentence and approve only a sentence of a bad-conduct discharge, confinement for 1 year, and reduction to E-3. We further find this reassessed sentence to be appropriate. Article 66(c), UCMJ. The findings of guilty as modified and the sentence as reassessed are
AFFIRMED.
Judges RIVES and JAMES concur.

. Contrary to his pleas, a general court-martial convicted appellant of 14 offenses of insufficient funds checks under Article 123a and two assaults upon a child under the age of 16 years. The convening authority approved appellant’s adjudged sentence of a bad-conduct discharge, confinement for 1 year, and reduction to E-l.

. Uniform Commercial Code (UCC) § 3-409(1); Nev.Rev.Stat.Ann. § 104.3409 (1989); see also 38 Am.Jur.2d Gifts § 65 (1968).

. This offense was alleged as specification 4 of Charge I.