OPINION OF THE COURT
GRAVELLE, Senior Judge:
In accordance with his pleas, the appellant was found guilty of two specifications of conduct unbecoming an officer and three specifications of making and uttering worthless checks by dishonorably failing to maintain sufficient funds in his account, in violation of Articles 133 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 933 and 934 (1988) [hereinafter UCMJ]. A military judge sitting as a general court-martial sentenced him to dismissal from the Army, confinement for three years, forfeiture of all pay and allowances, and to pay a fine in the amount of $15,000.00. In compliance with the terms of a pretrial agreement, the convening authority reduced the confinement to thirty months, and otherwise approved the adjudged sentence.
The appellant asserts that his pleas of guilty were improvident for a myriad of reasons. We disagree and affirm.
I.
Between 1989 and November 1992, Lieutenant Jenkins wrote over two hundred dishonored checks with a face value of over $35,000.00. Many of these checks involved a scheme known as “check kiting.” [1]
During the providence inquiry, Lieutenant Jenkins explained that his difficulties with writing checks began in 1989 when his mismanagement of his checking account frequently caused checks to “bounce.” He explained that there came a time in March 1991 when he realized that many of his outstanding checks would be returned because of his continuing mismanagement of his account and that he had no money to make good on these cheeks. In order to avoid that happening, he devised a scheme whereby he wrote more checks, payable to himself for cash, at various locations near his kaserne in Germany. He then took the money he received, bought postal money orders, and express mailed the money to his bank in Texas in order to have money in the account in Texas to cover the earlier checks he had written. Then, in order to cover the newest checks, he would repeat the scheme. This he did, over and over.
Each time he wrote checks without sufficient funds, he hoped that the money would arrive in his account in time to cover cheeks previously written. The appellant admitted that at the time he wrote each check, he knew he did not have money in his account to cover the check, but he hoped that his continuing scheme would provide a balance in the account until he found a way to honor all the checks he had written. He admitted *843 knowing that he was creating a false balance in his account, and that if he didn’t take subsequent action by writing further checks or finding a source of money, the checks would be dishonored. Using this scheme, many checks cleared the bank without being dishonored. On occasion, however, while this scheme was in operation, the timing went awry, and many of the checks were dishonored. His actions in writing those and other earlier dishonored cheeks resulted in most of the charges in this case.
When he was not able to make good on some of the checks that were dishonored, the appellant, at various times between May 1990 and May 1992, prepared and signed fictitious names to six bogus letters purporting to be from officials at his bank in Texas. These false letters explained away the appellant’s apparent bad checks by saying the dishonor of the checks was a bank error. He used these letters to avoid losing his check-cashing privileges and to avoid the consequences of his cheek-writing by convincing his commanders of his innocence because he “didn’t want to go through the hardship of having to explain the process to my commander or chain of command.” His actions resulted in a specification of conduct unbecoming an officer by falsely making these letters.
The appellant was originally charged with six specifications in violation of Article 123a. He attempted to plead guilty to the lesser-included Article 134 offenses of making and uttering worthless checks by dishonorably failing to maintain sufficient funds in his account. The military judge rejected his pleas to Specifications 1, 2, and 3, which collectively covered a period of time between 9 December 1989 and 31 December 1990. The military judge found that the appellant’s conduct during this earlier period was merely negligent and not “dishonorable” for purposes of the Article 134 offense. He accepted the appellant’s pleas to Specifications 4, 5, and 6, which collectively covered the period between and 5 February 1991 and 5 November 1992.
The military judge also accepted the appéllant’s pleas to conduct unbecoming an officer by writing two hundred and two worthless checks of a total value of $31,610.16 during the period of 9 December 1989 through 5 November 1992, and by falsely making six bogus letters from bank officials.
II.
The appellant now asserts that his pleas were improvident as to Specifications 4, 5, and 6 of Charge II (dishonorable failure to maintain sufficient funds) because the military judge failed to address a possible mistake-of-fact defense. We reject this contention out of hand. We find no indication of a mistake-of-fact defense raised here. Even assuming that the appellant’s elaborate and articulate explanation of his actions can be construed to present the defense, we find it a “mere possibility” and without “substantial basis” in law or fact. We find that the plea is provident. United States v. Prater, 32 M.J. 433 (C.M.A.1991).
The appellant also asserts that his plea to Specification 2 of Charge III (conduct unbecoming an officer by writing worthless checks) is improvident because the military judge’s findings are inconsistent with his findings-regarding Specifications 1, 2, and 3 of Charge II. Appellant reasons that the military judge refused to accept his pleas to those specifications for acts occurring between December 1989 and December 1990 because the accused’s admissions demonstrated simple negligence rather than dishonorable conduct. At the same time, the military judge accepted his pleas to conduct unbecoming an officer for the entire period of December 1989 through November 1992, conduct which the appellant asserts must be dishonorable in order to be a violation of Article 133, UCMJ. The appellant asks that we modify the findings to exclude those cheeks he wrote in 1989-1990, and that we order a rehearing on sentence. In an alternate attack, he also asserts that the military judge failed to elicit sufficient facts to show gross indifference, and failed to address a possible mistake-of-fact defense as to the Article 133, UCMJ offense.
We accept the military judge’s reasoning that the appellant’s course of conduct regarding his checking account during the entire period of December 1989 through 5 Novem *844 ber 1992 was conduct that was unbecoming an officer. Lieutenant Jenkins may not have dishonorably failed to maintain sufficient funds during the initial stages of his check-writing, but we find that his behavior in negligently writing seventy-six dishonored checks between December 1989 and December 1990, followed by his grossly negligent check-writing after December 1990, compromised his standing as an officer and was “dishonoring and disgracing” to him personally during the entire period. See Manual for Courts-Martial, United States, 1984, Part IV, para. 59c. Based on the stipulation of fact and in the appellant’s admissions during the providence inquiry, we find that the plea was provident. We do not find that the mistake-of-fact defense was reasonably raised by the appellant’s admissions. Prater, 32 M.J. at 433. We hold that the facts elicited from the appellant are sufficient to support the appellant’s plea. Accordingly, we decline to grant the requested relief.[2]
We have reviewed the supplemental assignments of error filed by appellate defense counsel and the errors personally asserted by the appellant pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A. 1982), and find no merit in any of them. After reviewing the record, the appellant’s affidavit and Grostefon letter, and the appellate briefs, we specifically find that the appellant has failed to meet his burden of showing that his counsel was ineffective under the standards of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and United States v. Scott, 24 M.J. 186 (C.M.A.1987). See also United States v. Crum, 38 M.J. 663 (A.C.M.R.1993). We also specifically find that Specification 1 of Charge III (conduct unbecoming an officer by making and signing six false letters purportedly from bank officials) does state an offense under Article 133, UCMJ. Further, the appellant’s plea to this offense was provident. Assuming, without deciding, that the appellant’s conduct does not constitute forgery as defined by Article 123, UCMJ, 10 U.S.C. § 923 it clearly does constitute conduct unbecoming an officer.[3] United States v. Miller, 37 M.J. 133 (C.M.A.1993); United States v. Taylor, 23 M.J. 314 (C.M.A.1987); United States v. Czekala, 38 M.J. 566, 575 (A.C.M.R.1993).
The findings of guilty and the sentence are affirmed.
Judge JOHNSTON and Judge BAKER concur.

. A good explanation of the mechanics and theory of “check kiting” is found in United States v. Clarke, 29 M.J. 582 (A.F.C.M.R.1989), pet. denied, 31 M.J. 433 (C.M.A.1990). In Clarke, the Air Force court affirmed Clarke's conviction of a violation of Article 123a, UCMJ, 10 U.S.C. § 923a by engaging in a check-kiting scheme. We need not decide in this case whether "check kiting” of itself is a criminal act, or simply nothing more than a self-help interest-free loan. We do note that “kiting” of checks could conceivably undermine the soundness of commercial paper, a consideration recently utilized by the U.S. Court of Military Appeals in a case involving an Article 123a offense. See United States v. Woodcock, 39 M.J. 104, 106 (C.M.A.1994), quoting Commonwealth of Pennsylvania v. Burruss, 380 Pa.Super. 212, 551 A.2d 580 (1988).

. Even if we were to agree with the appellant and reduce the number of checks from 202 to 124 checks (and shorten the period of time), our action would not change our view that the sentence as approved by the convening authority is appropriate in this case.

. Lieutenant Jenkins asserts that he "is entitled to have his record of conviction reflect accurately the gravamen of his misconduct." We agree, and will, by Notice of Court-Martial Order Correction, amend the court-martial order to reflect more accurately his dishonorable and disgraceful conduct.