**UNITED STATES, Appellee,**

v.

**Brian L. HARDSAW, Airman First Class, U.S. Air Force, Appellant.**

No. 97–0802.
Crim.App. No. 32187.

U.S. Court of Appeals for the Armed Forces.

Argued Feb. 5, 1998.

Decided Sept. 29, 1998.

For Appellant: *Major Carol L. Hubbard* (argued); *Colonel Douglas H. Kohrt* (on brief); *Lieutenant Colonel Kim L. Sheffield.*

For Appellee: *Captain Tony R. Roberts* (argued); *Colonel Brenda J. Hollis* and *Lieutenant Colonel Michael J. Breslin* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a general court-martial composed of a military judge sitting alone on April 5, 1996, at Kunsan Air Base, Republic of Korea. He was found guilty, in accordance with his pleas, of 11 specifications of making a total of 93 bad checks with an intent to defraud, in violation of Article 123a, Uniform Code of Military Justice, 10 USC § 923a. He was sentenced to a bad-conduct discharge, confinement for 7 months, total forfeitures, and reduction to the lowest enlisted grade. On June 10, 1996, the convening authority approved this sentence. On March 12, 1997, the Court of Criminal Appeals affirmed the findings of guilty and the sentence as adjudged and approved.

This Court, on August 8, 1997, granted review of the following two issues of law:

I

WHETHER APPELLANT'S PLEAS TO SPECIFICATIONS 1, 5, 6, 7, AND 11 OF THE CHARGE ARE PROVIDENT WHERE THE MILITARY JUDGE FAILED TO INQUIRE WHETHER THE NUMEROUS CHECKS REFLECTED THEREIN WERE WRITTEN FOR THE PAYMENT OF A PAST DUE OBLIGATION WITH THE IN-

TENT TO DECEIVE RATHER THAN FOR THE PROCUREMENT OF ANY ARTICLE OF VALUE WITH THE IN-TENT TO DEFRAUD AS CHARGED.

## II

WHETHER THE APPLICATION OF ARTICLES 57(a) AND 58b, UCMJ, VIOLATES THE *EX POST FACTO* CLAUSE OF THE UNITED STATES CONSTITUTION WITH RESPECT TO APPELLANT.

We hold for the Government on Issue I because the record of trial establishes the legal validity of appellant's guilty pleas to violating Article 123a and contains no matter "in substantial conflict" with those pleas. *See United States v. Shearer*, 44 MJ 330, 334 (1996); *United States v. Felty*, 12 MJ 438 (CMA 1982). Issue II is resolved in appellant's favor.

— — —

Appellant pleaded guilty to 11 specifications of violating Article 123a for writing 93 worthless checks. Each specification alleged an intent to defraud, and each specification alleged the checks were written "for the procurement of lawful currency or things of value," as required in Article 123a(1). Appellant notes that he told the judge that all the checks written to the Consolidated Mess were "either to pay on my club card or to get cash." He then claims that his pleas to the "Consolidated Mess" specifications were invalid because an intent to deceive, not an intent to defraud, was required for the offense of using bad checks to satisfy a past-due debt obligation under Article 123a(2). *See generally United States v. Wade*, 14 USCMA 507, 34 CMR 287 (1964).

Appellant freely admitted that he wrote 93 bad checks with an intent to defraud while stationed in Korea. The record shows the military judge advised him on the intent to defraud as follows:

"Intent to defraud" means an intent to obtain an article or thing of value through a misrepresentation and to apply it to one's own use or the benefit or use of another either temporarily or permanently.

\* \* \*

MJ: Now I read you the definition earlier of what it means to defraud, and that means one part of the definition—well, I'll tell you what. Let me just reread the entire definition.

"Intent to defraud" *means an intent to obtain* an article or a thing of value *through a misrepresentation* and apply it to one's own use or benefit or to the use and benefit of another either temporarily or permanently.

*So based upon that definition, do you agree that you intended to defraud?*

ACC: Yes, sir.

MJ: So you did obtain an article or thing of value with these particular checks, *and do you agree that you misrepresented to the people you were giving these checks to that there were, in fact, funds to cover these checks?*

ACC: *Yes, sir.*

MJ: And you took the proceeds and applied it to your own benefit and use or the use and benefit of another?

ACC: Yes, sir.

MJ: Even though it may have only been temporarily in your mind?

ACC: Yes, sir.

MJ: So let me just kind of ask again. What was your intent, then, when you gave these checks to the individuals or the organizations?

ACC: To get cash.

MJ: In each case cash, or were there other—

ACC: Or to get an object that I wanted.

MJ: Something of value?

ACC: Yes, sir.

(Emphasis added.)

— — —

Appellant's claim in this case is that his particular pleas of guilty to violating Article 123a by writing bad checks to pay off a club bill were invalid. He notes that the military judge advised him that *an intent to defraud* was required on his part for conviction of this

offense. *See* Art. 123a(1). He argues, however, that use of a bad check to pay a past-due obligation must be prosecuted under Article 123a(2), and that it requires *an intent to deceive.* He concludes, "As such, Appellant's pleas as to Specifications 1, 5, 6, 7, and 11 of the Charge were improvident as the record contains sufficient evidence in substantial conflict with his pleas of guilty." Final Brief at 8. We disagree.

■ Article 123a provides, in pertinent part:

§ 923a. Art. 123a. Making, drawing, or uttering check, draft, or order without sufficient funds

Any person subject to this chapter who—

(1) for the procurement of any article or thing of value, *with intent to defraud;* or

(2) for the payment of any past due obligation, or for any other purpose, *with intent to deceive;*

makes, draws, utters, or delivers any check, draft, or order for the payment of money upon any bank or other depository, knowing at the time that the maker or drawer has not or will not have sufficient funds in, or credit with, the bank or other depository for the payment of that check, draft, or order in full upon its presentment, shall be punished as a court-martial may direct ...

(Emphasis added.)

This statute, in its two sections, clearly distinguishes between use of a bad check to obtain something of value and use of a bad check to satisfy a past-due debt. *See Wade,* 14 USCMA at 510, 34 CMR at 290. Nevertheless, we conclude that payment of a past-due obligation by a bad check with an intent to defraud, as defined by the judge in this case, is an offense under this codal article. *But cf. id.* (Congress did not intend "to create ... a hybrid crime consisting of the intent taken from one section of the Article and the purpose from another.").

In this regard, we note that an intent to defraud is generally defined at military law as follows:

(14) *Intent to defraud.* "Intent to defraud" means an intent to obtain, through a misrepresentation, an article or thing of value and to apply it to one's own use and benefit or to the use and benefit of another, either permanently or temporarily.

Para. 49c(14), Part IV, Manual for Courts-Martial, United States (1995 ed.); *Wade, supra* at 509–10, 34 CMR at 289–90. Intent to deceive, however, is defined differently:

(15) *Intent to deceive.* "Intent to deceive" means an intent to mislead, cheat, or trick another by means of a misrepresentation made for the purpose of gaining an advantage for oneself or for a third person, or of bringing about a disadvantage to the interests of the person to whom the representation was made or to interests represented by that person.

The basic difference is that the former requires an intent to obtain something valuable through misrepresentation, and the latter requires only an intent to misrepresent. *Id.* In our view, an intent to defraud includes an intent to deceive because the former necessarily requires an intent to misrepresent or deceive. *United States v. Leach,* 7 USCMA 388, 403, 22 CMR 178, 193 (1956); *cf. United States v. Wilson,* 13 USCMA 670, 673, 33 CMR 202, 205 (1963) (intent to deceive not sufficient to include intent to defraud).

In this light, the record of trial in this case clearly establishes the legal validity of appellant's pleas of guilty to a violation of Article 123a. *See generally Shearer,* 44 MJ at 334; *United States v. Harrison,* 26 MJ 474 (CMA 1988). While the specifications which cover his use of the bad checks to pay his club bill may contain surplus language, it was legally sufficient to allege a violation of Article 123a(2). Moreover, appellant, at least implicitly, admitted that he intended to deceive all the recipients of his checks, and no matter in the record substantially conflicts with these admissions. Accordingly, appellant's pleas of guilty must be upheld. *See also Felty,* 12 MJ at 442 ("technical variance between the offenses alleged and that which is established from an accused's own lips does not require setting aside the plea of guilty")[1].

---

1. If the five challenged specifications were treated as violations of Article 123a(2), the maximum

■ The second issue in this case is raised under the decision of this Court in *United States v. Gorski,* 47 MJ 370 (1997). Appellant's offenses occurred between September 12, 1995, and January 28, 1996, but he was found guilty and sentenced on April 5, 1996. Under the law prior to April 1, 1996, appellant's forfeitures and reduction would take effect on the date of the convening authority's action (June 10, 1996). Under the new law, after April 1, 1996, appellant's forfeitures and reduction took effect 14 days after the sentence was imposed (April 19, 1996). Art. 57(a)(1), UCMJ, 10 USC 857(a)(1). Thus, collection of forfeitures and execution of the reduction were accelerated, and the resulting total was increased by application of the new law to offenses which were committed prior to the date of its enactment, in violation of Article I, 9 of the United States Constitution. *United States v. Gorski, supra.* Accordingly, under *Gorski,* appellant must be made whole for the forfeitures and reduction improperly imposed on him prior to June 10, 1996.[2]

The decision of the United States Air Force Court of Criminal Appeals is affirmed as to result only. Execution of the forfeitures and reduction prior to the date of the convening authority's action is hereby declared to be without legal effect. Any forfeitures collected prior to that date, and any pay and allowances withheld because of the premature reduction in grade, will be restored. The record of trial is returned to the Judge Advocate General of the Air Force for appropriate action.

Chief Judge COX, Judge CRAWFORD, and Senior Judge EVERETT concur.

GIERKE, Judge (concurring in the result):

Because I believe that the military judge's questioning of appellant resolved any potential inconsistency with a guilty plea, I do not think it is necessary to decide whether "an intent to defraud includes an intent to deceive," or whether appellant's guilty plea to a different offense is only a "technical variance between the offenses alleged and that which is established from an accused's own lips." Accordingly, I decline to join in the majority's resolution of these issues.

The record includes a stipulation of fact that recites that appellant "made and uttered all 93 checks listed below with the intent to defraud and for the procurement of lawful currency or things of value." During the plea inquiry, appellant said that he cashed the checks, "either to pay on my club card or to get cash." Later, however, the military judge revisited the issue and asked appellant, "What was your intent, then when you gave these checks to the individuals or the organizations?" Appellant responded, "To get cash .... [o]r to get an object that I wanted." In my view, appellant's responses to the military judge's additional questions established a provident plea to the offenses charged. For this reason, I concur in the result on this issue.

---

authorized punishment would decrease from 149 years to approximately 126 years. *See* para. 49e, Part IV, Manual for Courts–Martial, United States (1995 ed.). In view of the 12–month cap in the pretrial agreement and the 7–month sentence imposed, we find no prejudice in sentence in appellant's case.

**2.** It has been my position that these types of cases should be returned to the Courts of Criminal Appeals to further consider the questions of waiver and ineffective assistance of counsel. *See United States v. Gorski,* 47 MJ 370, 376 (1997) (Sullivan, J., concurring in part and in the result). This view has not persuaded a majority of this Court. *See United States v. Roseboro,* No. 98–0439, —— MJ —— (Daily Journal July 27, 1998) (Sullivan, J., dissenting).